**Falasha Mansa Musa AMEN-RA, et al., Plaintiffs,**

v.

**DEPARTMENT OF DEFENSE, Defendant.**

**No. 94–3108–RDR.**

United States District Court, D. Kansas.

March 31, 1997.

Falasha Mansa Musa Amen-Ra, Fort Leavenworth, KS, pro se.

Terry W. Evans, Lewisburg, PA, pro se.

Louis B. Niles, Woodland Hills, CA, pro se.

Jamie F. Graham, Burlington, VT, pro se.

Ricky D. Welker, Fort Leavenworth, KS, pro se.

Darin Butler, Fort Leavenworth, KS, pro se.

Earnest J. Sexton, Fort Leavenworth, KS, pro se.

Charles D. Hicks, Jr., Fort Leavenworth, KS, pro se.

Richard L. Plummer, Leavenworth, KS, pro se.

Mary K. Ramirez, Office of U.S. Atty., Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on a civil rights action brought by a group of inmates at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. Plaintiffs seek release from confinement due to defendant's alleged failure to comply with a decision of this court, new parole and clemency board consideration, injunctive relief from the use of a Salient Factor Score system to evaluate suitability for parole and from Inmate Treatment Plans developed as rehabilitation programming, and revised law library procedures.

On May 31, 1995, defendant filed a motion to dismiss or for summary judgment (Doc. 39), and plaintiffs have had the opportunity to respond.[1] The court has examined the record and considered the pleadings filed by the parties and now makes the following order.

### Factual Background

Plaintiffs are inmates convicted and sentenced to confinement by court-martial. The plaintiffs are not under a sentence of death, nor are they housed in maximum custody, reception, special quarters, female housing, officer housing, or administrative segregation.

In July 1993, the court granted the petition of habeas corpus sought by plaintiff Amen-Ra, then known as Dwayne Keith Jefferson, concerning his eligibility for parole under Department of Defense regulations and directed the Army to conduct a parole hearing. *Jefferson v. Hart,* 1993 WL 302137 (D.Kan. 1993), *aff'd,* 84 F.3d 1314 (10th Cir.1996).

While the court's decision in *Jefferson v. Hart* concerned only plaintiff Amen-Ra, the Air Force Clemency and Parole Board, Naval Clemency and Parole Board, and Army Clemency and Parole Board reviewed inmates at the USDB who were convicted under the earlier, more favorable regulation governing military parole eligibility consistent with the court's order in *Jefferson.* Some hearings were conducted, and one inmate was granted parole.

In July 1993, the Army Clemency and Parole Board began to use the Salient Factor Score system used by the United States Parole Commission to gauge an individual's suitability for release on parole. The Naval Clemency and Parole Board also uses this system.

The USDB created the Inmate Treatment Plans Program ("ITTP") to tailor rehabilitation programs to the needs of the individual

---

**1.** By its Order of February 28, 1997 (Doc. 71), the court granted plaintiffs to and including March 24, 1997, to file any additional response to the motion. Plaintiffs were advised that no extensions of time would be granted. On March 24, the clerk of the court docketed an opposition to the motion for summary judgment by plaintiffs Niles, Amen-Ra, Graham, Welker, Butler, Sexton, Hicks, and Plummer (Doc. 73), a motion for restraining order (Doc. 74), and a motion to extend time to file a memorandum in support of the opposition to the motion for summary judgment (Doc. 75). Given the length of time which has elapsed since defendant's motion was filed, the court declines to extend the time for filing additional responses.

inmate. The program is voluntary and incorporates group therapy, vocational programming, and academic training into the individual plan. Inmates who successfully pursue the ITPP may receive custody elevation, detail changes, and other favorable consideration. Participation in the program is voluntary, but in order to participate, inmates must accept responsibility for their criminal conduct because participation in the ITPP includes participation in crime specific group therapy.

Inmates at the USDB have access to legal materials. Inmates in death penalty, maximum custody, or in special quarters are not permitted to visit the law library personally but may submit requests through regular law library calls conducted twice a week. These requests may be for specific materials or for research assistance to identify the appropriate material. The material is then delivered to the inmate.

General population inmates have personal access to the law library through library calls held three times per day five days a week. Accommodation has been made for inmates who use the library in back-to-back calls to allow them to save time by not reshelving their legal materials between calls. Support services available to USDB inmates include a civil legal assistance program which provides inmates in non-military civil litigation including divorce and child support, tort claims, and name changes. Inmates involved in current criminal litigation are represented by the Trial Defense Service, and trained law library staff is available to library users. Typewriters, carbon paper, and limited photocopying support are available to all inmates, and special mailing and photocopying services are available to indigent inmates. Fourteen inmates may use the library at each call. The evening library call is made in the same time frame as recreation call and rehabilitation programs, while Saturday library calls coincide with recreation periods.

## Discussion

Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa, Okla.,* 896 F.2d 1228, 1230 (10th Cir.1990).

## Standing

 Defendant seeks dismissal of all claims made concerning the conditions of confinement in the special housing unit and death row housing because the plaintiffs have never been housed in these areas. Generally, standing to present a claim requires that the plaintiff have a personal interest in the court's decision and that "he personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). *See also, Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996) (court must "provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm"). Because the plaintiffs are not subject to the conditions of confinement in the special housing and death penalty areas, the court agrees these claims must be dismissed. The dismissal of these claims is based entirely on the plaintiffs' lack of standing, and the court offers no opinion on the merits of any claims

concerning the conditions of confinement in these areas.

### Compliance with *Jefferson v. Hart*

■ Plaintiffs seek injunctive relief on their claim the defendant failed to comply with the court's order in *Jefferson v. Hart* by failing to afford meaningful parole and clemency review.

The court's decision in *Jefferson v. Hart* was based on an analysis of the facts specific to plaintiff Amen-ra. While the defendant has chosen to extend the rationale of the court's decision to similarly situated inmates, the decision did not direct such action and creates no basis for other inmates to seek enforcement or judicial oversight of parole and clemency consideration in their cases.[2] Therefore, the court finds no basis to consider plaintiffs' claims for injunctive relief in the absence of a finding specific to the claimants.

### Salient factor analysis

■ Plaintiffs next claim the defendant's use of the salient factor scoring analysis developed by the United States Parole Commission ("Commission") violates ex post facto principles by introducing guidelines that were not in effect at the time of their convictions and by increasing the time served prior to parole.

■ The Ex Post Facto Clause of the Constitution is interpreted to forbid the passage of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719–20, 111 L.Ed.2d 30 (1990) (citing *Calder v. Bull*, 3 Dall. 386, 391–92, 1 L.Ed. 648 (1798)).

Prior to 1988, Department of Defense Instruction 1325.4 prescribed the criteria to be used by the Army Clemency and Parole Board ("ACPB") in assessing suitability for parole, including all aspects of the inmate's sentence, the inmate's progress in confinement, the circumstances of the crime, and the inmate's personal history. DOD Instruction 1325.4, para. III.P.1. (October 7, 1968). In 1988, the instruction was updated and reissued listing many of the same factors for parole and including as criteria the impact of the crime on the victim and the welfare of society. DOD Directive 1325.4, para. J.3.b. (May 19, 1988).

In July 1993, the Chairman of the Army Clemency and Parole Board issued guidelines adopting the approach of the United States Parole Commission, which applies a Salient Factor score to a system of time ranges to establish the length of an inmate's confinement. This approach applies many of the same factors already considered by the ACPB, such as criminal history and offense severity. In addition, the Commission guidelines, as adopted by the ACPB, promote a flexible evaluation of an inmate's parole risk based upon particular mitigating or aggravating factors.

Because the adoption of the salient factor system changed the method to be followed in setting an inmate's release date but does not mandate a particular result that would necessarily lengthen an inmate's confinement, the court concludes no ex post facto violation has occurred. *See California Dept. Of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (amendment to state statute that allowed Board of Prison Terms to reduce frequency of hearings in some circumstances did not violate ex post facto clause; statute did not increase petitioner's punishment but merely altered' method for assessing release date under same substantive standards); *Resnick v. United States Parole Commission*, 835 F.2d 1297, 1301 (10th Cir.1987) (noting weight of authority that Commission guidelines are not subject to ex post facto prohibition). The court therefore rejects plaintiffs' challenge to the use of the salient factor system.

### Inmate Treatment Plan Agreement

■ Plaintiffs challenge the constitutionality of the Inmate Treatment Plan Program. While the exact nature of this claim is unclear, it appears plaintiffs perceive the program to compel self-incrimination.

■ Plaintiffs are not entitled to relief on this claim. Participation in a voluntary reha-

---

**2.** The appropriate remedy for an inmate who alleges unconstitutional confinement and seeks speedier release lies in habeas corpus. 28 U.S.C. § 2241.

bilitation program which requires inmates to accept responsibility of their crimes does not offend the constitutional privilege against self-incrimination. *See Russell v. Eaves*, 722 F.Supp. 558, 560 (E.D.Mo.1989) (voluntary sexual offender treatment program requiring inmates to accept responsibility for crimes did not violate Fifth Amendment), *appeal dismissed*, 902 F.2d 1574 (8th Cir.1990); *cf. Sundby v. Fiedler*, 827 F.Supp. 580 (W.D.Wis.1993) (inmate's limited interest in refusal to participate in sex offender treatment designed to help offenders accept responsibility outweighed by penological interest in rehabilitation).

**Access to law library**

■ Plaintiffs complain limited access to the law library violates their constitutional right of access to the courts.

■ It is long settled that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The Supreme Court's recent interpretation of *Bounds*, however, makes it clear that *Bounds* did not create an abstract, independent right of access to a law library or to assistance. *Lewis v. Casey*, —— U.S. ——, —— – ——, 116 S.Ct. 2174, 2179–80, 135 L.Ed.2d 606 (1996). In *Lewis*, the Court held that to state a claim of denial of access to the courts, an inmate must demonstrate an actual injury to pending or planned litigation occurred due to the denial of adequate legal resources. *Id.* Such a claim must involve an attack on the inmate's sentence or conditions of confinement, *id.* at ——, 116 S.Ct. at 2182, and delay in filing legal pleadings or access to the library or resources does not violate the right of access to the courts in the absence of a showing of prejudice. *See Beville v. Ednie*, 74 F.3d 210, 212–13 (10th Cir.1996) (no constitutional violation where delay did not prejudice inmate).

Plaintiffs complain broadly of difficulty in obtaining access to the law library due to the hours of operation and the pass system. However, they make no showing they have been unable to pursue a claim due to inability to obtain legal materials, and defendant's response to this claim shows that inmates housed in general population at USDB have access to the law library through fifteen weekly library calls, and that a variety of resources are available.

While plaintiffs complain of difficulty in access to the library due to a conflict in law library calls and other opportunities such as classes and recreation, they have identified no impediment to their legal pursuits sufficient to raise a triable issue of fact concerning prejudice.

**Conclusion**

After due consideration of the record, the court concludes defendant is entitled to summary judgment. Plaintiffs' claims, when considered in light of the record, do not present genuine issues of material fact.

IT IS THEREFORE ORDERED defendant's motion for summary judgment is granted. This matter is hereby dismissed and all relief is denied.

The clerk of the court shall transmit copies of this Memorandum and Order to plaintiffs and to counsel for defendant.

**IT IS SO ORDERED.**