No. 87,863

VAUGHN LOWER and SHARON LOWER, *Appellants*, v. THE BOARD
OF DIRECTORS OF THE HASKELL COUNTY CEMETERY
DISTRICT, STEVE WEIDNER, RODNEY WEEKS, EUGENE
WRIGHT, DANA LEONARD, HELEN HALL, RUBY RUTLEDGE
and MIKE SHERWOOD, all in their official capacities as members
of THE BOARD OF DIRECTORS OF THE HASKELL COUNTY
CEMETERY DISTRICT, *Appellees*.

(56 P.3d 235)

Opinion filed October 25, 2002.

*Jack W. Shultz*, of The Rutherford Institute, of Dodge City, argued the cause, and *Jeffrey L. Syrios*, of the same firm, of Wichita, was with him on the brief for appellants.

*Arthur B. McKinley*, of Sharp, McQueen, McKinley, Dreiling & Tate, P.A., of Sublette, argued the cause, and *James C. Dodge*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: Vaughn and Sharon Lower purchased a cemetery lot located in the Haskell County Cemetery, described as Lot 106, Block 5, from Jerry Robson, the local mortician, on October 18, 1994. The Haskell County Cemetery District issued a corporation deed to Vaughn Lower and Sharon Lower for the cemetery lot. The deed was filed at the Haskell County Register of Deeds office on November 2, 1994.

The lot was purchased by the Lowers for the purpose of erecting a monument for unborn babies. Sharon testified that the lot was not purchased for the burial of a human body. The Lowers' mo-

tivation was their belief as Christians in the value, preciousness, and sanctity of human life. The Lowers felt a responsibility "to reach out in love to individuals and families who have lost babies due to miscarriage, stillbirth and abortion by providing a place such persons can go to grieve . . . and find closure and healing."

After the Lowers purchased the cemetery lot, the Board of Directors of the Haskell County Cemetery District (Cemetery Board) met and established a policy on the use of cemetery lots in the Haskell County Cemetery District. On November 3, 1994, Dana Leonard, then president of the Cemetery Board, telephoned Sharon Lower and told her she could not do what she wanted to do at the cemetery.

Four years later, the Lowers erected a monument on Lot 106, Block 5, on or about November 1998. The inscription on the monument reads: "IN LOVING MEMORY OF ALL UNBORN BABIES." In addition, the inscription includes the following verse from the Bible, the Book of Isaiah: "I WILL NEVER FORGET YOU. SEE, UPON THE PALMS OF MY HANDS I HAVE WRITTEN YOUR NAME."

On May 12, 1999, the attorney for the Cemetery Board sent a letter to the Lowers concerning the memorial stone. The letter stated, in pertinent part:

"The Haskell Count Cemetery Board policy provides that all cemetery plots in the Lockport, Ivanhoe, Colusa and Haskell County Cemeteries are to be used exclusively for the interment of human remains. The policy further states that prior to use for any other purpose a request therefor must be made to the Board in writing and have prior approval of a majority of the entire Cemetery Board voting in favor of the use requested. This was not done prior to your setting of the memorial in Block Number 106 plot.

"The Board respectfully requests that the memorial placed without prior written approval of the Board be removed immediately. If the memorial is not removed by May 25, 1999, the Board will cause the stone to be removed and it will be stored at your expense."

The Lowers filed a petition in the District Court of Haskell County, Kansas, on June 29, 1999, challenging the validity of the regulations enacted by the Cemetery Board. The Lowers alleged that the actions of the Cemetery Board had deprived them of their property rights in the cemetery plot and infringed on their consti-

tutional rights to freedom of speech and freedom to exercise their religious beliefs and to the equal protection of the laws. The petition further alleged that the actions of the Cemetery Board were prohibited under the Civil Rights Act of 1866, 42 U.S.C. § 1983.

The Lowers sought relief from the district court in the form of a declaratory judgment that the regulations enacted by the Cemetery Board were facially unconstitutional and/or unconstitutional as applied. The Lowers also alleged that the Cemetery Board had singled them out and asked them to remove the monument based on the content of the inscription on the monument in violation of 42 U.S.C. § 1983 (1994). The Lowers also asked for temporary and permanent injunctive relief. District Judge Tom R. Smith immediately granted a temporary restraining order which restrained the Cemetery Board from attempting to enforce its regulation against the Lowers by removing, altering, or damaging the memorial stone pending further proceedings.

The district court found that it had proper jurisdiction over the parties and the subject matter. The district court also took judicial notice that the Haskell County Cemetery District was properly created pursuant to Kansas statutes. A journal entry memorialized the following findings of the district court:

"7. The issue at hand is whether or not a permanent restraining order should be issued to stop the Haskell County Cemetery District from removing the monument set on Lot 106, Block 5, owned by Vaughn Lower and Sharon Lower.

"8. The Temporary Restraining order, if lifted, would grant no authority to the Haskell County Cemetery Board or any other party to enter upon the lot for the removal of said stone. Plaintiffs have ownership of Lot 106, Block 5, under that authority granted to them for ownership of the cemetery lot by the Haskell County Cemetery District pursuant to statutes governing Cemetery Districts, specifically K.S.A. 12-1441(a) and (b) and K.S.A. 17-1302.

"9. This Court has treated the Motions and responsive Pleadings filed including the arguments of this date as a Motion for Summary Judgment.

"10. The Motion for Summary Judgment is herein **denied**.

"11. The Court now must deal with the future management of this matter. The following issues need to be dealt with in the framing of this matter for conclusion:

   A. For the Defendants to file amended Pleadings asking for the Deed of Conveyance of October 18, 1994, to be set aside under either a unilateral

or mutual mistake as to the intended purpose for the use of the lot and that its current use may violate Kansas statutes for the use of cemetery lots.

B. For the Defendants to file amended pleadings asking for a permanent injunction against the Plaintiffs for any use of said lot other than as described in the controlling statutes for Cemeteries in the State of Kansas.

C. The Court sees the issues facing the parties as rather simple issues and those issues are as follows:

1. The proper use of a cemetery lot in a cemetery district in the State of Kansas in accordance with statutory and case law.

2. Whether or not the current use of Lot 106, Block 5, is an authorized use of a cemetery lot in the State of Kansas.

3. The definition of sepulcher and the Court herein adopts the following definition of sepulcher: 'a burial vault to put in a sepulcher: inter,' as defined by WEBSTER'S II NEW RIVERSIDE DICTIONARY (rev. ed. 1996) and as defined in THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (unabridged ed. 1996) as 'a tomb, grave or burial place.' "

On September 21, 2000, the Cemetery Board filed an amended answer and counterclaim asking for injunctive and declaratory relief on the grounds that K.S.A. 12-1441 proscribes certain uses of cemetery grounds, and that under K.S.A. 17-1302, the authority of the Cemetery Board to convey lots was restricted to the "purposes of sepulture." The Cemetery Board sought permanent injunctive relief against the Lowers and any other persons acting in concert with them in maintaining the memorial on Lot 106, Block 5.

The Lowers filed an amended petition on February 20, 2001, incorporating by reference all the allegations contained in their original petition. The Lowers renewed their allegation that the Cemetery Board, acting under color of state law, had violated their constitutional rights. In addition, the Lowers asserted that K.S.A. 12-1441 and K.S.A. 17-1302 were unconstitutionally vague and ambiguous on their face and, therefore, did not provide authority for the Cemetery Board to take action to demand or cause the removal of the memorial stone from their lot.

On August 23, 2001, District Judge Kim Schroeder issued his decision in a journal entry concerning the Cemetery Board's summary judgment motion. One of the district court's findings was that

no human body was currently buried in the lot, and there were no plans for anyone to be buried there. The court declared that the Cemetery Board's policy for the use of cemetery lots was immaterial to the case in that the law in place prior to the sale of the lot controlled its use.

Without commenting further on the Lowers' claim that K.S.A. 12-1441 and K.S.A. 17-1302 were unconstitutionally vague and ambiguous, the district court simply wrote that the Kansas statutes governing the use of a cemetery lot were constitutional. Significantly, the district court held that the monument by itself without a human body buried in the lot did not meet the statutory requirements for the use of a cemetery lot. The district court wrote: "The proper use of a cemetery lot has been addressed by the Court in *Earhart v. Holbert*, 116 Kan. 487, 227 P. 351 (1924), when the Court said at page 488, 'The lot was purchased for burial purposes. It cannot be used for any other purpose. (R.S. 17-1302.)' " The district court granted the Cemetery Board a permanent injunction against the Lowers and ordered the removal of the monument. However, the district court granted the Lowers an order of stay pending appeal pursuant to K.S.A. 2001 Supp. 60-262.

The Lowers filed a timely appeal of the judgment of the district court. The matter comes before this court pursuant to a K.S.A. 20-3018(c) transfer.

## I. K.S.A. 12-1441 AND K.S.A. 17-1302

We believe this case is controlled by *Connolly v. Frobenius*, 2 Kan. App. 2d 18, 574 P.2d 971, *rev. denied* 225 Kan. 843 (1978). There, the Court of Appeals handled the matter by adopting a Georgia case, saying:

" 'When a tract of land has been dedicated as a cemetery, it is perpetually devoted to the burial of the dead and may not be appropriated to any other purpose. . . .

" ' . . . [I]t must be held that the property in question can only be used as a place for burying the dead, and any other attempted use is an unlawful attempt to appropriate property dedicated for cemetery purposes to other uses, which cannot be done.' " 2 Kan. App. 2d at 30 (quoting *Greenwood Cemetery, Inc. v. MacNeill*, 213 Ga. 141, 97 S.E.2d 121 [1957]).

In *Connolly*, the Kansas Court of Appeals stated:

"Kansas cases involving cemeteries have been limited to statements of the general rule.

" ' . . . All lots and tracts of land contained within the boundaries of a cemetery platted by a cemetery corporation are dedicated exclusively for burial purposes and cannot be used for any other purpose. (K.S.A 17-1302, *et seq*. [Weeks 1969]; *Earhart v. Holbert*, 116 Kan. 487, 227 Pac. 351; *Davis v. Coventry*, 65 Kan. 557, 70 Pac. 583.) . . . .' *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 44, 542 P.2d 278." 2 Kan. App. 2d at 31.

In *Connolly*, the Court of Appeals held that property dedicated for purposes of sepulture cannot be used for any other purpose.

K.S.A. 17-1335(a) vests district cemetery associations with "all the authority now provided by law for cemetery associations and corporations" and does not limit that authority to the provisions of chapter 17. Thus, the provisions of K.S.A. 12-1441, which order cemetery governing bodies to prevent unintended cemetery uses, pertains to the Cemetery Board. The district court correctly determined that the Cemetery Board must comply with the mandates of K.S.A. 12-1441, which state:

"(a) The governing body of any city or county which has established, acquired or otherwise assumed control of any cemetery or burial grounds shall prevent such cemetery or burial grounds from being used for dumping grounds, building sites, playgrounds, places of entertainment or amusement, public parks, athletic fields, parking grounds or any purpose other than for burial or other intended cemetery purposes.

"(b) The fact that any tract of land has been set apart for burial purposes and that a part or all of such tract has been used for burial purposes shall be evidence that such grounds were set aside and used for burial purposes regardless of whether graves are visible on any part of the grounds. For the purposes of this act, the terms 'cemetery' and 'burial grounds' shall mean parcels of land set aside and used for the interment of human bodies."

The central thrust of K.S.A. 12-1441 is to direct cemetery governing bodies to prevent cemetery grounds from being used for any purpose other than "for burial or other intended cemetery purposes."

The district court found that no human body was buried in the Lowers' lot and that they did not plan to bury anyone there. Instead, the Lowers, motivated by their religious beliefs, used their

cemetery lot for the purpose of erecting a monument memorializing unborn babies as a class. The district court correctly concluded that the Lowers' use of their lot solely to erect a monument memorializing a class with no design for the interment of human remains contravened the statutory requirement limiting the use of the lot to purposes of sepulture. Thus, we hold that the district court did not err in determining that in light of K.S.A. 17-1302, the monument erected by the Lowers violated statutory authority.

Because K.S.A. 17-1302 limits the Cemetery Board's power to convey lots solely for purposes of sepulture, there is no need for this court to analyze whether Kansas statutes give cemetery governing bodies the discretion to determine cemetery purposes. The Lowers were not using their cemetery lot for the purpose of sepulture, burial, or interment as required by 17-1302, and that was the basis for the district court's decision. The Lowers' claim premised on a discretionary exercise of power by the Cemetery Board fails.

In sum, we agree with the district court's conclusion that the phrase "other intended cemetery purposes" found in K.S.A. 12-1441 did not provide authority for the Lowers to use their cemetery lot for any purpose other than "sepulture," as provided by K.S.A. 17-1302. Thus, we find that the district court did not err in interpreting K.S.A. 12-1441, K.S.A. 17-1302, and other Kansas statutes concerning cemeteries as prohibiting the Lowers from placing a monument "In Loving Memory of All Unborn Babies" on their cemetery lot.

We conclude that the legislature has spoken on the subject and limits the use of a cemetery lot to burial purposes. If the law is to be changed, the legislature must change it. The Cemetery Board has authority to make rules and regulations and to govern the cemetery but only within the authority given to it by the State of Kansas.

As a practical matter, problems arise if a person buys a cemetery lot to bury a loved one and then discovers a marker on the next lot taking a position that the deceased was opposed to in his or her lifetime.

We do not mean to imply that a marker or a memorial cannot be installed, but it must be done within state law and rules and regulations of the cemetery. Here, no attempt was made to have the Cemetery Board approve or set aside a special lot for what the Lowers were attempting to do.

We hold that the district court did not err in determining that in light of K.S.A. 17-1302, the monument erected by the Lowers violated statutory authority.

## II. GRANT OF SUMMARY JUDGMENT TO CEMETERY BOARD

The Lowers next assertion on appeal is that the district court should not have granted summary judgment to the Cemetery Board on its counterclaim because it was not entitled to a judgment as a matter of law. The Lowers contend that their claim pursuant to 42 U.S.C. § 1983 should have survived summary judgment.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2001 Supp. 60-256(c). On appeal, an appellate court applies the same rules, and where it finds reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, Syl. ¶ 1, 44 P.3d 364 (2002).

In its August 23, 2001, journal entry which considered the cross-claims of the Cemetery Board, the district court simply stated:

"18. Plaintiff has raised multiple constitutional issues dealing with Freedom of Speech, Freedom of Religion, Due Process of Law, Equal Protection of Law, to cloud the real issue before the Court, which is the correct use of a cemetery lot by the owner.
"19. The statutes governing the use of a cemetery lot are constitutional."

The Lowers maintain that genuine issues of material fact exist as to their claim that the Cemetery Board violated their civil rights in contravention of 42 U.S.C. § 1983. The Lowers argue that they need only establish that the Cemetery Board, acting under color of state law, deprived them of a constitutional right for their § 1983

suit to survive summary judgment and present four claims of constitutional violations.

The Cemetery Board argues that the Lowers have produced no evidence through discovery or otherwise that provides factual support for the allegations in their petition. The Cemetery Board's position is that because the Lowers did not acquire or use their cemetery lot in a statutorily permitted manner, the language on the Lowers' monument is irrelevant.

42 U.S.C. § 1983 (1966) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"A § 1983 claim has two essential elements: (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds Daniels v. Williams*, 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986). Both state and federal courts are proper forums for such actions. [Citation omitted.]" *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 957, 26 P.3d 1246 (2001).

In this case, the Lowers brought suit against the members of the Cemetery Board in their official capacities. The Lowers imply that the members of the Cemetery Board used "the badge of their authority" to deprive them of their federally guaranteed rights.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). However, § 1983 applies to local governmental entities that "are not considered part of the State for Eleventh Amendment purposes." 491 U.S. at 70. Moreover, " ' "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." ' " *Prager v. Kansas Dept. of*

*Revenue,* 271 Kan. 1, 12, 20 P.3d 39 (2001), quoting 491 U.S. at 71 n. 10.

We agree the Cemetery Board meets the definition of a person for purposes of § 1983. Thus, we turn our attention to the second required prong for a § 1983 suit and review the four claims of constitutional violations of the Lowers. In portions of their brief, the Lowers generally describe the violative "action" taken by the Cemetery Board as "the distinction the Board drew by excluding the Lowers' memorial while allowing others to stand." In other parts of their brief, the Lowers describe the violative action of the Cemetery Board to be the promulgation of new regulations concerning the use of a cemetery lot.

First, the Lowers allege that their memorial is a form of protected religious speech in a traditional public forum and that the restriction of their speech by the Cemetery Board is not justified by any compelling interest. The Cemetery Board argues that its regulatory actions directed at the Lowers and the statutes on which its actions are based are aimed at controlling conduct, not speech. The appellate standard of review of a district court's grant of summary judgment dictates that all inferences which may reasonably be drawn from the evidence be resolved in favor of the party against whom the ruling is sought. Therefore, although the relevant cemetery statutes appear to restrict only conduct when limiting the use of a cemetery lot, we will proceed with a review of the Lowers' claim that the statutes impermissibly burden their right to free speech.

"Government restrictions on speech on public property are traditionally analyzed by classifying the regulated property as one of three kinds of fora described by the Supreme Court: public fora, designated public fora, and nonpublic fora. In traditional public fora, devoted to assembly and debate by long tradition or government fiat, the government may exclude a speaker only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. In designated public fora, which the government creates by intentionally opening a forum to certain classes of speakers, the government's exclusion of a speaker who falls within the class to which the forum is made generally available will be subjected to strict scrutiny. In nonpublic fora, the government may restrict access by content or speaker identity, so long as the restrictions are reasonable and not an effort to suppress expression merely because

public officials oppose the speaker's view. See *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). Thus, restraints on speech in a nonpublic forum will be upheld unless they are unreasonable or they embody impermissible viewpoint discrimination." *Griffin v. Secretary of Veterans Affairs,* 288 F.3d 1309, 1321 (D.C. Cir. 2002).

In *State ex rel. Stephan v. Lane,* 228 Kan. 379, 386, 614 P.2d 987 (1980), this court previously stated that "[a] cemetery which is open to the public for burial is a public cemetery regardless of the fact it is privately owned or maintained . . . [and] that '[a] cemetery is as public a place as a courthouse, or a market.' " Current federal authority, however, supports the idea that while a cemetery may be open and accessible to the public, cemeteries may properly be classified as nonpublic fora for purposes of constitutional review. See *Griffin,* 288 F.3d at 1322; *Warner v. City of Boca Raton,* 64 F. Supp. 2d 1272, 1291 (S.D. Fla. 1999); *Koehl v. Resor,* 296 F. Supp. 558, 561 (D.C. Va. 1969). For purposes of constitutional review, we find it appropriate to adopt the view that cemeteries are nonpublic fora.

"Access to a non-public forum . . . can be restricted as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.' [Citation omitted.]" *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,* 473 U.S. 788, 800, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985).

In this case, K.S.A. 17-1302 limits the use of cemetery lots to "purposes of sepulture." We find that this statutory limitation is a reasonable restriction on the use of a cemetery lot to further "the important State interest in preserving and maintaining cemeteries" (228 Kan. at 393), with no design to suppress the content of expressions on individual monuments.

Further, in light of the purpose for which cemetery lots may be sold and used under K.S.A. 17-1302 and K.S.A. 12-1441, we view the Cemetery Board's actions toward the Lowers as reasonable and facially neutral. The record does not convince this court that the Cemetery Board acted to exclude the Lowers' monument while allowing others to stand merely because board members opposed the Lowers' view. We conclude that the Cemetery Board's enforcement of the statutory restriction was reasonable and not an effort

to suppress expression. Because the second essential element of the test for a 42 U.S.C. § 1983 claim is not met, we also hold that the district court did not err in granting summary judgment in regard to the Lowers' allegations that the Cemetery Board violated their constitutional right to free speech.

The Lowers' second claim of constitutional violation is that the Cemetery Board's action in promulgating its regulation restricting their use of the lot and in enforcing the Kansas statutes burdened the Lowers' exercise of their religion in violation of the First Amendment of the United States Constitution and § 7 of the Kansas Constitution Bill of Rights. The Lowers state that they are Christians and that their sincerely held religious beliefs compel them to publicly advocate viewpoints based upon those beliefs. The Lowers also state they "believe they are to love their fellow human beings and give comfort and encouragement to those who are sorrowing or experiencing affliction" and, therefore, they decided to erect a memorial in the cemetery for those who lose unborn babies.

The Lowers argue that the Cemetery Board's regulation, although facially neutral, was adopted "for the specific purpose or objective of infringing upon or restricting the placement of the Lowers' memorial because of the Lowers' religious motivation and speech." Here, the district court's decision in favor of the Cemetery Board was based on Kansas statutes concerning the correct use of a cemetery lot by the owner. The district court found that the regulations of the Cemetery Board were immaterial. The Lowers do not challenge this finding on appeal.

Generally, "standing" requires that a plaintiff have a personal interest in the court's decision and that he or she personally has suffered some actual or threatened injury as a result of putatively illegal conduct of the defendant. *Amen-Ra v. Department of Defense*, 961 F. Supp. 256, 259 (D. Kan. 1997), *aff'd* 149 F.3d 1190 (10th Cir. 1998). Because the district court held that the Cemetery Board's regulations did not apply to the Lowers' cemetery lot since the regulations were promulgated after the sale of the property, the Lowers lack the standing to complain that the Cemetery Board's adoption of regulations deprived them of their right to freely exercise their religion.

The Cemetery Board maintains that the Lowers are not entitled to disregard valid statutes simply because their beliefs are sincerely held. According to the Cemetery Board, the facts do not indicate that the State of Kansas or the Cemetery Board burdened the Lowers' right to worship God according to the dictates of their conscience; compelled them to attend or support any form of worship; controlled or interfered in their rights of conscience; or enacted any law respecting an establishment of religion or prohibiting the Lower's free exercise of their religion.

"The bill of rights of our state constitution, section 7, provides:

'The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of or interference with the rights of conscience be permitted, nor any preference be given by law to any religious establishment or mode of worship. . . . '

"The first amendment of the federal constitution provides:

'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .'

and the fourteenth amendment thereof provides:

'. . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. . . .'

. . . .

"In accommodating between the competing right of the state to compel action in the public welfare and the right of the individual to his constitutional religious freedom the courts have distinguished between religious beliefs and religious practices. Failure to comply with reasonable requirements in the exercise of the police power for the general welfare has never been condoned in the name of religious freedom. As stated in *Commonwealth v. Beiler, Appellant,* 168 Pa. Super. 462, 79 A.2d 134, 137,

'Religious liberty includes the absolute right to believe but only a limited right to act.' " *State v. Garber,* 197 Kan. 567, 572-73, 419 P.2d 896 (1996), *cert. denied* 389 U.S. 51 (1967).

"In *Employment Div., Dept. of Human Resources v. Smith,* 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990), the Supreme Court held that a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice. *Id.* at 878-79, 110 S. Ct. at 1599-1600; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S. Ct. 2217, 2226, 124 L. Ed. 2d 472 (1993) ('[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.')." *Thiry v. Carlson,* 78 F.3d 1491, 1496 (10th Cir. 1996).

The Lowers concede that the Kansas cemetery statutes are facially religion-neutral. The determinative question is whether the statutes had the effect of burdening the Lowers' religious practice. In *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450, 99 L. Ed. 2d 534, 108 S. Ct. 1319 (1988), the United States Supreme Court stated that incidental effects of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not substantially burden the exercise of religion. The Lowers do not maintain, and the record does not reveal, any evidence that the Lowers were coerced into acting in a manner contrary to their beliefs as a result of the applicable Kansas statutes or the actions of the Cemetery Board.

Again, the second essential element of the test for a 42 U.S.C. § 1983 claim is not met. Thus, we find that the district court did not err in granting summary judgment in regard to the Lowers' § 1983 claim that the Cemetery Board violated the Free Exercise Clause or § 7 of the Kansas Constitution Bill of Rights.

Third, the Lowers claim that the Cemetery Board's action deprived them of property without due process of law in violation of their procedural due process rights. The Lowers again point to the Cemetery Board's promulgation of regulations, a topic immaterial to the district court's ruling in this case. The Lowers contend that the Cemetery Board did not give them or others opportunity to be heard before adopting new cemetery regulations and assert they are entitled to trial on "the issues of the true motive, manner and purpose of the Board's hasty meeting of November 21, 1994, and their adoption of new rules targeting the Lowers' use of their cemetery lot."

The Cemetery Board first declares that cemetery lots are not subject to the laws of ordinary property and claims that its actions in enforcing regulations did not constitute a taking of the property right conveyed by the deed, which was the right to inter human remains in the lot. The Cemetery Board contends that the laws of the State of Kansas and the action of the Board do not constitute a taking of the Lowers' property. The Cemetery Board cites *United*

*States v. Locke*, 471 U.S. 84, 85 L. Ed. 2d 64, 105 S. Ct. 1785 (1985), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 120 L. Ed. 2d 798, 112 S. Ct. 2886 (1992), in support of the proposition that its actions did not constitute a "taking."

We previously examined the taking of cemetery property and procedural due process in *Lane*, 228 Kan. 384-85.

"If a statute falls within the exercise of the police power of the State, those subject to that statute must submit to its provisions, whatever the effect may be upon property or business. [Citation omitted.] However, there are limits to the scope and permissible exercise of the State's police power. The court described those limits in *Grigsby v. Mitchum*, 191 Kan. 293, 302, 380 P.2d 363 (1963), cert. denied 375 U.S. 966 (1964), stating:

'Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, or involve an injury to a person, or deprive a person of property within the meaning of the Fourteenth Amendment to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and if it is not unreasonable or arbitrary.

'Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them.'

"In *State ex rel. v. Anderson*, 195 Kan. at 655, the court entertained a challenge to certain state statutes governing sale of burial lots, burial vaults, and markers. After reciting familiar principles outlining the State's police power, the court stated: 'We have no difficulty in saying the subject is within the scope of the State's police power. The state has long had regulatory statutes of various kinds touching upon disposition of dead bodies.' "

The Lowers also maintain that the Cemetery Board cannot justify the actions taken against them under the doctrine of police power. The Lowers appear to argue that the prevention of unintended cemetery purposes such as the Lowers' bears no substantial relationship to the public welfare. In addition, the Lowers appear to contend that the legislature exercised its regulatory police power in promulgating cemetery statutes in an arbitrary and capricious manner unrelated to the safe disposal of human remains. There-

fore, the Lowers maintain that the legislature's regulations and the Cemetery Board's actions to enforce the statute amounts to the unconstitutional exercise of police power.

The authority of the Kansas Legislature to pass reasonable regulations for the creation and operation of cemeteries is well established.

"It has been universally recognized that a state may, in the exercise of its police power, regulate the location and operation of cemeteries within its borders. [Citation omitted.] In Kansas, the construction and maintenance of cemeteries, and the organization of cemetery corporations, are extensively regulated by statute. See generally K.S.A. 12-1401 *et seq.*; K.S.A. 15-1001 *et seq.*; and K.S.A. 17-1302 *et seq.*" *Johnson County Memorial Gardens, Inc. v. City of Overland Park*, 239 Kan. 221, 223, 718 P.2d 1302 (1986).

We hold that neither the laws of the State of Kansas nor the Cemetery Board's actions for the removal of the monument constitute a taking of the Lowers' property interest in their cemetery lot in violation of procedural due process. The State's exercise of police power bears a real and substantial relation to the general welfare of the public for the operation and maintenance of cemeteries. Further, because the district court held that the Cemetery Board's regulations did not apply to the Lowers' cemetery lot since they were promulgated after the sale of the property, the Lowers do not have standing to complain they were deprived of procedural due process. Moreover, we do not find that a taking occurred since the Lowers retain the right to use the cemetery lot for the purposes of sepulture, which is the original property interest conveyed with title to the lot. The second essential element of the test for a 42 U.S.C. § 1983 claim is not met in regard to the Lowers' claim of violation of the right to procedural due process. We therefore find that the district court did not err in granting summary judgment.

Fourth, the Lowers claim that the actions of the Cemetery Board violate their guarantee to equal protection of the law. Again, the Lowers challenge the actions of the Cemetery Board in promulgating regulations which the district court held did not apply. The Lowers argue that in enacting the new regulations, the Cemetery Board treated them differently than other similarly situated persons who purchased a plot and erected a headstone.

The Cemetery Board challenges the Lowers' assertion that they are "similarly situated" and denies there are any other persons who have placed memorial stones on individual lots placed solely for the purpose of expressing a particular religious belief with no intention of using the lots for the interment of human remains. The Cemetery Board observes that in answers to interrogatories, the Lowers could not identify any stone similarly located with a similar intent.

"Equal protection is implicated when a statute treats 'arguably indistinguishable' classes of people differently." *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 251, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

We find that the Lowers' assertion of equal protection violation fails for two reasons. First, the Lowers lack the standing to challenge the Cemetery Board's promulgation of regulations under an equal protection claim since those regulations do not apply to the Lowers' cemetery lot. Second, the Lowers fail to demonstrate they were treated differently than other similarly situated lot owners in the Haskell County Cemetery. We therefore find that the district court did not err in granting summary judgment to the Cemetery Board because the second element of the test for a 42 U.S.C. § 1983 claim is not met in regard to the Lowers' claim that their right to equal protection was violated.

Affirmed.

LARSON, S.J., assigned.