(90 P.3d 961)
No. 91,329

ROGER LAUBACH, *Appellant*, v. RAY ROBERTS, WARDEN OF ELLSWORTH CORRECTIONAL FACILITY; and DAVID R. MC-KUNE, WARDEN OF LANSING CORRECTIONAL FACILITY, *et al.*, *Appellees*.

Opinion filed May 28, 2004.

*Roger Laubach*, appellant pro se.

*Robert E. Wasinger*, of the Department of Corrections, for appellees.

Before RULON, C.J., HILL, J., and WAHL, S.J.

RULON, C.J.: Petitioner Roger Laubach appeals the summary denial of his pro se petition for relief. We affirm in part and dismiss in part.

The material facts are as follows:

In late 1999, the petitioner sought medical treatment for poor eyesight. He was referred to Dr. Ziemianski, a retinal specialist, who indicated that the petitioner's retinas functioned within the normal limits. In February of 2000, the petitioner was examined

by Dr. Reifschneider, who referred the petitioner to a neuro-ophthalmologist, Dr. Wuster at the University of Kansas Medical Center. Dr. Wuster found no significant impairment, and tests conducted in May of 2000 suggested peripheral contraction but no medical diagnosis.

In April of 2001, Dr. Reifschneider again examined the petitioner and found no objective cause for the petitioner's claimed vision loss. The degree of cataract in the petitioner's eyes diminished his vision to 20/50, but optico-kinetic nystagmus and mirror tests indicated that the petitioner did fixate and track well with each eye.

Eventually, the petitioner stopped attending his sexual abuse treatment program (SATP). One of the program administrators notified the petitioner that petitioner's lack of attendance would require petitioner's termination from the program unless he began to regularly attend program sessions. Instead of returning to the program, the petitioner signed a voluntary termination form. The form provided:

"I, *Roger Laubach* KDOC #59642, have freely chosen to terminate my commitment to the SATP/DCCCA, Inc. as of this date *4-18-01*.

"I have been advised by *David Serena,* SATP Staff member, that it is in my best interest to participate in the Sexual Abuse Treatment Program. Although my failure to follow the advice I have received may [a]ffect my parole eligibility status, I nevertheless choose to terminate my commitment to this program. I assume the risks and consequences involved with this decision.

"I choose to terminate from the Sexual Abuse Treatment Program (SATP) for the following reason(s): *I can [sic] see to fill this out.*

"I further understand that by signing this termination, my name will be removed from the waiting list. If I change my mind at a later date, the only way I will be considered for acceptance into the SATP again is to submit a Form 9 to both my Unit Team and SATP no earlier than 60 days from termination. My assignment to this program will then be on a space availability basis only." (Emphasis added.)

Although the petitioner indicated that he could not see, a notation by David Serena at the bottom of the acknowledgment indicates the above form had been read to the petitioner and that the petitioner voluntarily terminated the program.

Sometime later, the petitioner was transferred from Lansing, a minimum security facility to Ellsworth, a medium security facility.

The petitioner lost the incentives associated with a Level 3 because petitioner was returned to a Level 1 for terminating the sexual abuse treatment program. Consequently, in May of 2001, the petitioner filed an inmate request with a unit team member to discover why he had been transferred to a medium security facility and why he had lost incentives. The response from the corrections officer indicated the petitioner lost his incentives for failing to complete the SATP.

Later, the petitioner submitted a request to the deputy warden for the return of his incentives because he had been removed from the treatment program solely because of his inability to read the required materials. Although this record contains no response to the petitioner's request, the warden of the Ellsworth facility did respond to the petitioner's inmate complaint filed on June 6, 2001. After investigating the complaint and receiving a memorandum from the treatment program, the warden opined the petitioner's termination of the treatment program was completely voluntary and that the treatment program makes reasonable accommodations for inmates with physical and mental limitations.

On June 27, 2001, the petitioner filed an appeal to the Secretary of Corrections, claiming that petitioner did not voluntarily withdraw from the treatment program but that he was forced to terminate because of poor eyesight. On July 13, 2001, the Secretary of Corrections affirmed the warden's response to the petitioner's grievance complaint.

Before receiving the Secretary's response, however, the petitioner filed another inmate request demanding cataract surgery, which petitioner claims had been scheduled for November 2000, but which he had never received. Petitioner filed another inmate complaint on July 8, 2002, alleging that his eye surgery was improperly canceled by the regional medical director after the ophthalmologist recommended surgery. The unit team response indicated that the medical procedure was denied by the regional medical director because the director believed the benefit of the surgery to the petitioner was slight and the risk of injury to the eye as a result of the surgery was, therefore, not warranted. This re-

sponse was supported by the clinical nurse, Deborah Butler. There is no further appeal of this issue contained within the record.

Meanwhile, despite the Secretary's determination, the petitioner continued to seek a return of his incentive privileges. Petitioner filed two separate inmate requests and received two responses recommending that the petitioner return to the treatment program. The petitioner filed another complaint based upon the prison's refusal to transfer him to another section of the prison to house with a friend who offered to assist the petitioner in reading and writing.

The unit team response to the petitioner's request to transfer indicated that the petitioner had not demonstrated a medical need for a transfer. While acknowledging the petitioner needs assistance with reading and writing due to poor eyesight, the unit team response suggested the prison had made reasonable accommodations to the petitioner's physical limitation by providing the petitioner with his own copy of the canteen list, by permitting the petitioner to move into any cell within the same section of the prison, if he could locate a prisoner who would be willing to help him with reading and writing, and by offering assistance of prison employees to read official notices upon request by the petitioner.

The petitioner appealed this determination to the warden, who affirmed the unit team response. The record does not contain a further appeal of this issue to the Secretary of Corrections.

On November 25, 2002, the petitioner filed an action pursuant to "K.S.A. 60-209; K.S.A. 21-3905; K.S.A. 21-3803; K.S.A. 21-805; K.S.A. 21-3902, Kansas and § 1983 Federal Civil Rights Statutes Act; Supreme Court Rule 170; Kansas Bill of Rights V; and Title II ADA American Disabilities Act." The petitioner claimed the respondents collectively violated his constitutional rights as well as violating the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 *et seq.*, by terminating the petitioner from the sex offender treatment program merely because of his inability to read and by preventing the petitioner from obtaining the medical attention his eyes required. The petitioner also sought a jury trial.

On February 6, 2003, the Department of Corrections and its officers in their official and individual capacities moved to dismiss

the petitioner's action based upon petitioner's failure to exhaust the administrative remedies and upon a failure to state a claim upon which relief may be granted.

On May 8, 2003, the petitioner filed a motion with the district court to permit an inmate to act as a reader for the petitioner at his hearing and requested an order for both the petitioner's and the reader's attendance at the hearing. The district court denied the petitioner's request to permit the inmate to act as a reader for the petitioner, and the petitioner filed a motion for the recusal of the presiding judge.

On August 6, 2003, the district court summarily dismissed the petitioner's petition and denied the motion for recusal. The petitioner appeals.

First, we must decide if the district court improperly dismissed the petitioner's claims without holding an evidentiary hearing.

In appealing the summary dismissal of his action, the petitioner claims his action is supported by K.S.A. 60-209; K.S.A. 21-3905; K.S.A. 21-3803 (repealed 1983); K.S.A. 21-805 (repealed 1974); K.S.A. 21-3902; 42 U.S.C. § 1983; Supreme Court Rule 183 (2003 Kan. Ct. R. Annot. 213); the Kansas Constitution Bill of Rights § 5; and Title II of the ADA American Disability Act.

In evaluating the claims of a pro se prisoner, courts should broadly construe the petition to ascertain whether the prisoner has articulated any basis upon which relief may be granted. See *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Because the petitioner generally complains about the conditions of his confinement, the petition may properly be treated as a request for habeas corpus relief pursuant to K.S.A. 60-1501. See *State v. Mejia*, 20 Kan. App. 2d 890, 892-93, 894 P.2d 202 (1995). The petitioner further asserts claims pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983, and under the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. Other authority cited by the petitioner, even if interpreted broadly, provides no cause of action.

In any civil action against a correctional facility in Kansas, an inmate is required to exhaust all available administrative remedies established by regulation before seeking redress in a Kansas court.

See K.S.A. 75-52,138. The applicable regulations governing the administrative grievance process are K.A.R. 44-15-101 *et seq*. The administrative procedure established for an inmate seeking redress within the correctional system is (1) an informal request for relief from the pertinent prison personnel or unit team members; (2) a formal complaint to the warden or principal facility administrator; and (3) an appeal to the Secretary of Corrections. K.A.R. 44-15-101(b) and (d).

K.S.A. 75-52,138 requires an inmate to attach proof to his or her petition that administrative remedies have been exhausted. While the petitioner attached some grievance forms to his petition, none of the forms demonstrate an appeal to the Secretary of Corrections. Here, the petitioner has not strictly complied with the statutory requirements for filing a civil action against the Department of Corrections and its officers.

However, in this case, the petitioner raised three separate grievances: (1) removal of the petitioner from the SATP because of his poor vision; (2) preventing the petitioner from obtaining needed medical care; and (3) failure to accommodate the petitioner's medical needs by permitting a housing transfer. Along with their motion to dismiss, the respondents attached grievance forms which establish that the petitioner sought review by the Secretary of Corrections on the complaint related to his removal from the SATP. Consequently, although the district court properly dismissed the petitioner's claims that the respondents prevented him from obtaining needed medical care and that the respondents failed to accommodate him by transferring him to another cell unit, this court may consider the petitioner's complaint the respondents violated his constitutional and federal statutory rights by involuntarily removing him from the SATP because of his vision impairment.

Although neither party raises the issue because the petition was not clearly filed pursuant to K.S.A. 2003 Supp. 60-1501, this record indicates a lack of jurisdiction, which this court must consider on its own initiative. See *State v. Verge*, 272 Kan. 501, 521, 34 P.3d 449 (2001). According to K.S.A. 2003 Supp. 60-1501(b), an inmate must file a habeas corpus petition within 30 days of the improper action serving as the basis for an alleged constitutional violation,

except that such time period is tolled during the administrative review process.

The Secretary of Corrections considered the only issue before this court on July 13, 2001. The petition was filed on November 15, 2002. Thus, to the extent that the petition seeks relief from unconstitutional conditions of confinement, this court lacks jurisdiction to consider the matter, and such claim must be dismissed. See *Verge*, 272 Kan. at 521.

Concerning the district court's summary dismissal of the petitioner's § 1983 and ADA claims, however, the petitioner is not subject to the 30-day filing requirements of K.S.A. 2003 Supp. 60-1501(b). Where a district court has dismissed a civil claim, other than a claim for habeas relief, an appellate court must assume the facts alleged by the petitioner to be true, along with any reasonable inferences to be drawn therefrom, in determining whether the petitioner has stated any claim upon which relief may be granted. See *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 634, 35 P.3d 815 (2001), *cert. denied* 537 U.S. 841 (2002).

Here, however, the respondents relied upon evidence outside of the petitioner's claims in seeking a dismissal. Although the district court's journal entry, which dismissed the petitioner's claims, is extremely conclusory, the court indicated it had reviewed the files and considered the arguments of the respondents. Where a district court is presented with matters outside the pleadings and the court considers such matters, the motion to dismiss for failure to state a claim will be treated as a motion for summary judgment. See *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 885, 9 P.3d 1251 (2000) (citing K.S.A. 60-212[b]).

Our standard of review for summary judgment is well established. If the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate an absence of any genuine issue of material fact, judgment as a matter of law is proper. The court must resolve any conflicting evidence and inferences to be drawn from the evidence in favor of the nonmoving party. On appeal, this court applies the same standard. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

In order to establish a § 1983 claim, the plaintiff must demonstrate that a person acting under color of state law performed some conduct which deprived the plaintiff of a right guaranteed by the Constitution or federal law. See *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 957, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002).

It is impossible to determine from the scant record on appeal whether the staff members of the SATP/DECCA, who terminated the petitioner from the treatment program, are persons within the meaning of 42 U.S.C. § 1983. See *Lower v. Board of Dir. of Haskell County Cemetery Dist.*, 274 Kan. 735, 744, 56 P.3d 235 (2002) (discussing who may be sued under § 1983). However, assuming, without deciding, that some of the respondents may be sued under § 1983, the petitioner's claim fails due to petitioner's inability to demonstrate a violation of the Constitution or federal law.

In order to establish a cognizable claim for a due process violation, the petitioner must establish a valid liberty or property interest in his or her incarceration status which has been infringed by the State without due process of law. See *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir.), *cert. denied* 493 U.S. 870 (1989). Here, the only property and liberty infringements have occurred because of the implementation of Internal Management Policies and Procedures (IMPP) 11-101 upon the petitioner's failure to complete the SATP.

In *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227, *cert. denied* 525 U.S. 1060 (1998), our Supreme Court considered this issue. After considering the effect of IMPP 11-101 upon an inmate's liberty and property interests, the *Stansbury* court concluded the incentive policies do not infringe upon a recognizable property or liberty interest. Consequently, the policy does not violate the Due Process Clause of the United States Constitution. 265 Kan. at 419-21.

The allegations of the petitioner do not support a § 1983 claim for a violation of the Eighth Amendment. The United States Supreme Court has declared that the deliberate indifference to an inmate's medical needs violates the prohibition against cruel and unusual punishment encapsulated within the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 103-06, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). Deliberate indifference of a medical need contains both subjective and objective components. The objective component is satisfied if the petitioner can demonstrate that the medical need is sufficiently serious. A medical need is sufficiently serious if treatment has been diagnosed for it or if the need is so obvious that a lay person would recognize the need. The objective component is satisfied upon proof of the prison officials' knowledge of the need and disregard of an excessive risk to an inmate's health or safety. See *Darnell v. Simmons*, 30 Kan. App. 2d 778, 781, 48 P.3d 1278 (2002).

While the petitioner's claims contain some evidence of a serious medical need, there is nothing to indicate that the prison officials ignored an excessive risk to the inmate's health or safety nor is there evidence that the treatment program staff was aware of the petitioner's poor eyesight. According to David Serena, the staff member responsible for discharging the petitioner from the program, the petitioner never attended the SATP sessions at which the staff could have assessed the petitioner's need for accommodations to assist with his poor eyesight. There is no evidence that removing the petitioner from the treatment program created an excessive risk of harm to the petitioner's health or safety.

For similar reasons, the petitioner's claim for relief under the ADA must fail. An equal protection claim arising from disability-based discrimination is enhanced by the ADA. See *Schall v. Wichita State University*, 269 Kan. 456, 467, 7 P.3d 1144 (2000). In order to demonstrate an ADA claim pursuant to Title II, an inmate must demonstrate: (1) a qualified disability; (2) denial of participation in or the benefits of services, programs, or activities provided by the prison; and (3) a disability-based reason for the denial of services, programs, or activities. See *Damron v. North Dakota Com'r of Corrections*, 299 F. Supp. 2d 970, 977 (D.N.D. 2004) (citing *Layton v. Elder*, 143 F.3d 469, 472 [8th Cir. 1998]).

In requiring equal access to government programs, the ADA demands more than mere physical access. An administrator of a government program must provide meaningful access to the program, which may require reasonable accommodations. See *Chaffin*

*v. Kansas State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003) (citing *Alexander v. Choate*, 469 U.S. 287, 301, 83 L. Ed. 2d 661, 105 S. Ct. 712 [1985]). However, the public entity administering the program need not guess at the accommodation which will provide access to a person with a disability. See *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

Rather than seeking some reasonable accommodation to assist with the reading and writing requirements of the treatment program, the petitioner simply chose to withdraw. Perhaps petitioner feels that he was forced to withdraw because of his physical disability, but, without demonstrating a request for some reasonable accommodation which was denied, the petitioner fails to establish a violation of Title II of the ADA.

Because the record fails to support the petitioner's allegation that he was improperly dismissed from the SATP due to his poor eyesight, the district court properly dismissed the petition.

Finally, the petitioner complains the district court judge erroneously failed to recuse himself at the petitioner's request. Where a district court judge has refused to honor a criminal defendant's motion for recusal, an appellate court reviews the record to determine whether the judge had a duty to recuse because of bias, prejudice, or partiality. If the judge possessed a duty to recuse and did not, the appellate court will reverse only upon a showing that the judge's failure to recuse actually biased or prejudiced the criminal defendant. See *State v. Brown*, 266 Kan. 563, 569, 973 P.2d 773 (1999).

Because the petitioner's claims possess no merit and the district court properly dismissed the claims without holding an evidentiary hearing, the issue of the district court's claimed partiality is moot. Even if this court concluded that the district judge should have recused himself, such determination would have no effect on the resolution of the case or affect the rights of the petitioner. See *State v. Hatchel*, 31 Kan. App. 2d 725, 726, 71 P.3d 1191 (2003) (holding that a question is not considered moot unless the controversy has been resolved and deciding the question will not further the interests or rights of either party).

Affirmed in part and dismissed in part.