# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2723

_____

Timothy H. and Brenda H.,     *
Individually and as Guardians and     *
Next Friends of Kratisha H.,     *
    *
      Plaintiffs - Appellees,     *
    *    Appeal from the United States
v.     *    District Court for the
    *    Northern District of Iowa.
Cedar Rapids Community School     *
District, Grant Wood Area     *
Education Agency 10, and the     *
Iowa Department of Education,     *
    *
      Defendants - Appellants.     *

_____

Submitted: April 19, 1999
Filed: May 21, 1999

_____

Before BEAM and HANSEN, Circuit Judges, and KOPF,[1] District Judge.

_____

KOPF, District Judge.

This is an appeal from the district court's decision that a school district violated section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1999), when it refused

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

to provide Kratisha H., a special education student, with specialized transportation to a high school outside of her assigned attendance area pursuant to an intra-district transfer program. The transfer program allows students to attend schools in other attendance areas within the school district with permission from the district, subject to the requirement that parents provide the transferring student's transportation to and from school. We reverse.

## I.

The parents of Kratisha H., a high school student with cerebral palsy, spastic quadriplegia, multiple orthopedic problems, and severe communication disabilities, brought this action on Kratisha's behalf, seeking to require their school district to provide specialized transportation to enable Kratisha to attend John F. Kennedy High School, a high school that is located within the school district, but is not Kratisha's regularly assigned neighborhood school. Kratisha's parents do not dispute that Kratisha's neighborhood school offers a "free appropriate public education"[2] for her; they simply "prefer" the special education program available at Kennedy High School.

Kratisha has been educated pursuant to an annual Individualized Education Program ("IEP")[3] since her enrollment in the school district. Kratisha's IEP for 1994

---

[2]Regulations implementing the Rehabilitation Act and provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. (Supp. 1999), require the school district to provide a free appropriate public education ("FAPE") to Kratisha. See 20 U.S.C. §§ 1400(d) & 1401(8) (Supp. 1999) (purpose of IDEA is to assure a FAPE to all children with disabilities); 34 C.F.R. § 104.33(a) (1998) (recipient of federal funds that operates public secondary education program must provide a FAPE to qualified handicapped persons in recipient's jurisdiction).

[3]See 20 U.S.C. §§ 1401(11) & 1414(d) (Supp. 1999) (describing individualized education program).

to 1995 provided that she attend a class for students with severe and profound disabilities at Thomas Jefferson High School, her neighborhood school. The IEP also required special transportation services -- a lift bus and establishment of a special route -- which were provided to Kratisha when she attended her neighborhood school.

In 1995 Kratisha applied to attend the special education program at John F. Kennedy High School pursuant to an intra-district transfer program which allows all students to attend schools outside their assigned attendance areas with permission from the district and with transportation to be provided by the participating students' parents. The school district granted Kratisha's request, but advised Kratisha's parents that they would be required to transport Kratisha to Kennedy High School pursuant to the intra-district transfer policy, which provides in part: "Parents shall be responsible for the transportation of students not attending their resident area school . . . ."

Kratisha's parents transported Kratisha to Kennedy High School during the 1995-1996 school year. Kratisha's severe mobility impairment prevented her from driving, biking, or taking ordinary public transportation to Kennedy High School. The school district continues to offer transportation for Kratisha in a special lift bus if she attends Thomas Jefferson High School, her neighborhood school.

It would cost the school district approximately $24,000 per year to provide a lift bus and to establish a special bus route to enable Kratisha to attend her school of choice. While there is evidence that there are other children in the school district with moderate to severe needs who also need transportation services, the evidence does not reflect whether the parents of the other students attending Kennedy High School would have used Kratisha's particular bus route if one had been created such that economies of scale would reduce the district's cost.

Kratisha's parents filed an appeal with the Iowa Department of Education pursuant to Iowa Code Ann. § 256B.6 (West Cum. Supp. 1999) (parent of child denied entry in special education program appropriate to child's condition and needs may

obtain review by state board of education) challenging the school district's refusal to provide Kratisha with transportation to the special education program at Kennedy High School. The administrative law judge ("ALJ") found in favor of the school district, stating that Kratisha's parents had "not established a need beyond parental preference leading to the provision of services at a school other than her neighborhood school setting. To open up the door to the commitment of what appears to be unnecessary expenditures of substantial district resources to solely respond to parental preference would seem to place an unfair burden on local districts."

Kratisha's parents appealed the ALJ's decision to the district court, which held that the school district's policy of refusing to provide Kratisha with specialized transportation to Kennedy High School impermissibly limited her opportunity to participate in the benefits of the district's transfer program on the basis of her disability, in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1999). Further, the court found the school district failed to prove by a preponderance of the evidence that providing specialized transportation would be an undue financial or administrative burden. In making the latter finding, the court rejected the evidence that it would cost approximately $24,000 per year for the school district to provide a lift bus and establish a special bus route to enable Kratisha to attend Kennedy High School, stating that "it appears undisputed that there are a number of children similarly situated to Kratisha H., whose inclusion would result in economies of scale absent from the one-child, one-bus analysis. A fair and reasonable per-student cost analysis would have to include all students to whom the transportation requirement would be applicable."

Based on these findings, the district court ordered the school district to provide Kratisha with specialized transportation to Kennedy High School for as long as Kratisha's IEP calls for specialized transportation and Kratisha participates in the intra-district transfer program. The school district, an area education agency, and the state department of education ("the school district") appeal the district court's decision.

## II.

We review the factual findings of the district court for clear error and its legal conclusions de novo. Wood v. Omaha School Dist., 25 F.3d 667, 669 (8th Cir. 1994) (disability discrimination claim under Rehabilitation Act).

Section 504 of the Rehabilitation Act of 1973 provides in part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To prevail on a Rehabilitation Act claim under this section, a plaintiff must establish that she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability. A defendant to such a claim is entitled to assert as an affirmative defense that a requested accommodation would constitute an undue burden. Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). See also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999). "Accommodations are not reasonable if they impose 'undue financial and administrative burdens' or if they require a 'fundamental alteration in the nature of [the] program.'" Pottgen v. Missouri State High School Activities Ass'n, 40 F.3d 926, 930 (8th Cir. 1994) (quoting School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n.17 (1987)). See also Davis v. Francis Howell School Dist., 138 F.3d 754, 757 (8th Cir. 1998)

The parties in this case do not dispute that Kratisha is a qualified individual with a disability within the meaning of the Rehabilitation Act, the first relevant inquiry in a claim brought pursuant to 29 U.S.C. § 794(a). With regard to the second element, the evidence clearly establishes that Kratisha was not denied the benefit of participating in the school district's intra-district transfer program; that is, the school district considered and granted her application for participation, subject to the requirement, applicable to everyone, that Kratisha's parents transport her to her family's school of choice. Thus,

-5-

Kratisha's parents have failed to establish the second element of their Rehabilitation Act claim.

The third factor relevant to Kratisha's Rehabilitation Act claim is whether Kratisha was discriminated against based on her disability when the school district required her to provide her own transportation in order to participate in the intra-district transfer program. There is no evidence of overt discrimination in the school district's intra-district transfer program, including its parental-transportation requirement, because the program and its incorporated transportation policy are neutral, "appli[cable] to all students regardless of disability," and "unrelated to disabilities or misperceptions about them." DeBord v. Board of Educ., 126 F.3d 1102, 1105 (8th Cir. 1997) (refusal of school district to give dose of Ritalin to student with attention deficit hyperactivity disorder when dose exceeded recommended maximum in Physician's Desk Reference did not violate section 504 of Rehabilitation Act), cert. denied, 118 S. Ct. 1514 (1998). See also Davis, 138 F.3d at 756 (same). Further, there is no evidence that the district's transportation policy for intra-district transfer students was formulated or implemented with disabilities in mind. DeBord, 126 F.3d at 1105. Kratisha is not being denied access to the transfer program in this case because of her disability, but because her parents do not wish to comply with the main condition of the program applicable to all students who wish to participate -- parental transportation.

To the extent Kratisha's parents seek to prove unlawful discrimination based not on disparate treatment, but on the effect the school district's transportation policy has on mobility-impaired students, we do not find a basis for concluding that the school district's policy has a discriminatory impact upon the disabled. The school board's facially neutral transportation policy in its intra-district transfer program makes no distinction between students who will be required to provide their own transportation to their school of choice and those who will be transported by the school district "on the basis of any trait that the disabled or severely disabled are less or more likely to possess." DeBord, 126 F.3d at 1105 (citing Alexander v. Choate, 469 U.S. 287, 302

(1985) (assuming section 504 reaches disparate-impact discrimination, challenge to state's reduction in number of annual days covered by Medicaid for inpatient hospital care was not cognizable under section 504 because policy was neutral on its face, not alleged to rest on discriminatory motive, and did not deny the disabled equal access to the benefits provided to everyone)).  On the contrary, the school district requires that all students, regardless of their personal transportation situation[4], provide their own transportation to their school of choice as a condition of participation in the intra-district transfer program.

As we noted in Davis, 138 F.3d at 757, "[t]his court has not determined whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory."  However, even assuming the school district were required to modify its transportation policy to accommodate Kratisha's disability, the suggested accommodation considered by the district court -- establishment of a special bus route for Kratisha -- is an undue financial burden and a fundamental alteration in the nature of the intra-district transfer program. Id.; Pottgen, 40 F.3d at 930.

The evidence establishes that the school district would be required to spend approximately $24,000 per year to establish a special bus route to enable Kratisha to attend Kennedy High School, despite the undisputed fact that Kratisha's neighborhood high school has a special education program that meets her needs.  While there is evidence of other disabled children in the school district who need transportation services to attend school, the evidence does not reflect whether the parents of the other disabled students attending Kennedy High School would have used Kratisha's

---

[4]The policy at issue requires all students -- whether they are disabled such that they need a special mode of transportation to get to school, or whether they are not disabled and simply have no access to a car, bike, or city bus due to personal circumstances -- to provide their own transportation in order to participate in the intra-district transfer program.

particular bus route if one had been created such that economies of scale would reduce the district's cost in Kratisha's case. Further, requiring the school district to spend any amount of money to provide transportation to students participating in its intra-district transfer program would fundamentally alter the main requirement of a program designed to be of no cost to the school district -- parental transportation. In short, establishment of a special bus route for a single student who admittedly receives a free appropriate public education at her neighborhood school, but who wants to go to another school for reasons of parental preference, is an undue burden on the school district.[5]

## III.

Because Kratisha's parents have not established that Kratisha was denied the benefits of a program or activity of a public entity receiving federal funds or was discriminated against based on her disability, they have failed to prove elements necessary to their section 504 claim.[6] Even if the elements of a 504 claim had been established, the suggested accommodation would constitute an undue burden on the school district, requiring judgment to be entered in favor of the school district.

---

[5]Kratisha's parents rely heavily on an opinion letter written by the Office of Special Education and Rehabilitative Services to the Nebraska Commissioner of Education regarding the duty of a school district to provide transportation services to disabled children who choose to attend school in another school district. Response to Lutjeharms, 16 EHLR 554 (OSERS 1990). We do not find this opinion letter persuasive because, among other reasons, it is factually different from the case before this court.

[6]In their brief on appeal, Kratisha's parents advance a "second and alternative theory of relief" based on the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. although the district court granted relief to Kratisha and her parents based solely on section 504 and its regulations. During oral argument, counsel for Kratisha's parents admitted that his arguments under section 504 and the IDEA were duplicative. Therefore, we shall only address the section 504 claim.

Therefore, the judgment of the district court in favor of the plaintiffs is reversed, and this case is remanded to the district court for entry of a judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.