An appropriate order of partial dismissal will accompany this memorandum and order.

Michael D. DAMRON, Plaintiff,

v.

NORTH DAKOTA COMMISSIONER OF CORRECTIONS, Bismarck, North Dakota; Tim Schuetzle, Warden ND State Penitentiary; Bob Coad, Deputy Warden (ND); Ingrid Omlid, Education Dir. NDSP; Tammy Barstad, Instructor, NDSP; Dan Wrolstad, former Education Dir. NDSP; Mike Fluck, Guard, NDSP; Mike Kolden, Caseworker, NDSP; Pat Branson, Guard, NDSP; Dan Ebach, NDSP; Corky Stromme, Security, NDSP, Defendants.

No. A1–03–122.

United States District Court, D. North Dakota, Southwestern Division.

Jan. 26, 2004.

Michael Duane Damron, Bismarck, ND, pro se.

Douglas Alan Bahr, Todd A. Sattler, Attorney General's Office, Civil Litigation, Bismarck, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendants'[1] Motion for Summary Judgment. For the reasons set forth below, the Court grants the Defendants' motion for summary judgment.

### I. BACKGROUND

On August 5, 2002, the plaintiff, Michael D. Damron ("Damron") filed suit in United States District Court for the District of Minnesota against North Dakota and Minnesota prison officials alleging violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act and Section 1983 of the Civil Rights Act. Damron has been imprisoned in corrections institutions in both Minnesota and North Dakota since 1997. On September 22, 2003, the Minnesota District Court granted the Minnesota Defendants' motion for summary judgment, dismissed the North Dakota Defendants for lack of personal jurisdiction, and transferred Damron's claims against the North Dakota Defendants to the District Court of North Dakota. After the case was transferred to this Court, the Defendants filed a Motion for Summary Judgment on October 24, 2003. A response from Damron to the Defendants' Motion for Summary Judgment was filed on December 22, 2003.

### II. LEGAL ARGUMENT

Damron sets forth claims against the North Dakota Department of Corrections

---

1. In its motion, the North Dakota Attorney General's Office specifically noted that the motion was not brought on behalf of Mike Fluck, who it asserts is unknown, and Mike Kolden.

and against the prison officials in both their official and individual capacities. Damron alleges violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"). Damron has requested monetary relief in the form of $ 6,650 in compensatory damages arising from the alleged denial of educational opportunities and the confiscation of two calculators. In the alternative, Damron seeks injunctive relief in the form of ordering the Department of Corrections to give back his "Correspondence Coursework" and his calculator. Damron also seeks $ 100,000 in punitive damages. He also seeks $ 175,000 to finish his education when he is released from prison, or in the alternative, he seeks injunctive relief in the form of ordering the Department of Corrections to allow him to finish the approved correspondence courses with the appropriate calculator for his alleged learning disability.

In their summary judgment motion, the Defendants assert that all of Damron's claims fail on either issues of immunity or for failure to state a claim. The Defendants also assert that Damron's amended complaint seeks only monetary damages. In his response, Damron contends that Congress in enacting the ADA and the Rehabilitation Act abrogated the sovereign immunity of the states under the Fourteenth Amendment and that there are genuine issues of material fact still in dispute.

## A. ADA CLAIM

### 1) CLAIM AGAINST THE STATE AND THE PRISON OFFICIALS IN THEIR OFFICIAL CAPACITY

■ The Eleventh Amendment to the United States Constitution provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court stated in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman,* 415 U.S. 651, 663, 94 S.Ct. 1347 (citations omitted). "[A] federal court's remedial power, consistent with the Eleventh Amendment, . . . may not include a retroactive award which requires the payment of funds from the state treasury." 415 U.S. at 663, 677, 94 S.Ct. 1347. The Supreme Court has consistently held that the Eleventh Amendment bars suits for monetary damages in federal court against a state, including a state agency, by its own citizens as well as citizens of another state unless the State has waived its immunity.

■ In addition, the United States Supreme Court has held that a suit against an employee acting in his official capacity is tantamount to a lawsuit against the state. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As such, a suit against the individual prison officials in their official capacities is the same as a suit against the Department of Corrections and the State of North Dakota. However, "*Ex parte Young* permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court." *Bradley v. Arkansas Dep't of Educ.,* 189 F.3d 745 (8th Cir.1999) (citing *Ex parte Young,* 209 U.S. 123, 155–56, 159, 166–68, 28 S.Ct. 441, 52 L.Ed. 714

(1908)). In other words, "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Missouri Child Care Ass'n v. Cross,* 294 F.3d 1034, 1037 (8th Cir.2002).

■ It is well-established that the Eleventh Amendment bars suits by individuals against a state for money damages under the ADA. *Board of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir.1999). "Since *Alsbrook* and *Bradley,* [the Eighth Circuit] has clarified that under *Ex Parte Young* and its progeny, private individuals can in fact sue state officials under the ADA for prospective, injunctive relief only." *Grey v. Wilburn,* 270 F.3d 607, 609 (8th Cir.2001); *see Gibson v. Arkansas Dep't of Correction,* 265 F.3d 718, 722 (8th Cir.2001).

The Court expressly finds that Damron's ADA claim for monetary damages against both the Department of Corrections and the prison officials in their official capacities is barred by the Eleventh Amendment. However, Damron's ADA claim against the prison officials in their official capacities is not barred by the Eleventh Amendment to the extent that he is seeking prospective injunctive relief.

### 2) *CLAIM AGAINST THE PRISON OFFICIALS IN THEIR INDIVIDUAL CAPACITY*

■ Damron has also asserted violations of the ADA against the prison officials in their individual capacities, but he does not specify what provisions of the ADA the prison officials have allegedly violated. The ADA is separated into three titles. Title I applies to discrimination in employment. 42 U.S.C. §§ 12111–12117. Title II applies to discrimination in public services. 42 U.S.C. §§ 12131–12165. Title III applies to discrimination in public accommodations. 42 U.S.C. §§ 12181–12189. The Eighth Circuit has held that individuals may not be sued in their individual capacities directly under the provisions of Title II of the ADA. *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n. 8 (8th Cir.1999). In addition, the Eighth Circuit has noted with approval that three other circuits have held that there is no liability under Title I against individuals who do not otherwise qualify as "employers" under the statutory definition. *Id.* Further, the Eighth Circuit has also held that when there is no claim that an individual owned, leased, or operated the property in question, there is no colorable claim under Title III of the ADA. *Pona v. Cecil Whittaker's Inc.,* 155 F.3d 1034, 1036 (8th Cir.1998).

In this case, the prison officials were not Damron's employer so Title I cannot be a basis for his claims. Title II clearly does not provide for individual liability. Finally, there is no allegation that the prison officials in their individual capacity owned, leased, or operated the North Dakota State Penitentiary. Thus, under well-established Eighth Circuit precedent, the Court finds that the prison officials may not be sued in their individual capacity under Titles I, II, or III of the ADA.

### 3) *SUMMARY JUDGMENT*

At this stage, Damron's only remaining claim under the ADA is for prospective injunctive relief against the prison officials in their official capacity. As discussed above, Title II of the ADA is the only possible section that would apply to Damron's circumstances.

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of mate-

rial fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County,* 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In order to establish a violation of Title II of the ADA, Damron must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) such exclusion, denial of benefits, or other discrimination, was by reason of his disability. *Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998).

■ As to the first element of a Title II claim, Damron must show that he is a qualified individual with a disability. After a thorough review of the record, the only evidence that references Damron's alleged disability is an affidavit by J. Lee Berget (Doc. 1, Exhibit 2, ¶ 5) wherein she states that Damron has a "diagnosed specific learning disability" and a partial copy of a July 6, 1976, letter from an "Assistant Commissioner of Education" to Mr. and Mrs. David Arvidson which states that "it is evident that [Damron] [2] is a handicapped child as defined by Minnesota Statute 120.03 Subd.3." (Doc. No. 39, Exhibit 12, p. 1). Neither of these documents specifically identifies Damron's disability nor defines his limitations or special needs. Even when viewing this evidence in the light most favorable to Damron, the Court is doubtful that such limited and somewhat questionable documentation is sufficient evidence from which a jury could reasonably find that Damron is a qualified individual with a disability. Nonetheless, the Court will examine the remaining two elements of a Title II ADA claim.

Damron must also show that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity. Damron has shown that he was denied the use of a computer and that his calculator was taken away. Again, viewing the evidence in the light most favorable to Damron, the

---

**2.** The letter identifies the child in question as "Wade." However, a handwritten note at the bottom of the letter contends that the "Defendants are totally aware of Michael Damron's name change from Wade Arvidson." Giving the plaintiff the benefit of the doubt, the Court will accept the allegation that the letter is in reference to Damron.

Court will go on to examine the final element of a Title II claim.

To satisfy the final element of a Title II claim, Damron must show that the actions taken by the prison officials were by reason of his disability. The Court finds that Damron has completely failed in this respect. The record clearly shows that Damron was forbidden from using a computer only after he was disciplined for inappropriate behavior. *See* Affidavit of Cathy Jensen, Inmate Records Supervisor (Doc. No. 28, Exhibit C–6). There is no evidence which even suggests that prison officials limited or denied Damron the use of a computer because of any alleged disability. The record also clearly shows that Damron's calculator was taken away because of the security risk the prison officials determined it posed. *See* Affidavit of Cathy Jensen, Inmate Records Supervisor (Doc. No. 28, Exhibit E–1). Even if the Court were to agree with Damron that the prison officials acted arbitrarily and that his calculator did not pose a security risk, Damron has failed to show or even allege that his calculator was taken away because he was allegedly disabled. Accordingly, the Court finds that when viewed in a light most favorable to Damron, there are no genuine issues of material fact regarding his ADA claim.

To summarize, the Court finds that all of Damron's claims under the ADA fail. Damron's claim against the Department of Corrections and the prison officials in their official capacity are barred by the Eleventh Amendment. Damron's claim against the prison officials in their individual capacity fails because he has failed to show that any deprivation was by reason of his alleged disability. The Court grants the Defendants' motion for summary judgment as to all Damron's ADA claims.

## B. *REHABILITATION ACT CLAIMS*

### 1) *ELEVENTH AMENDMENT IMMUNITY*

■ The Eighth Circuit has held that "[u]nder the Rehabilitation Act, states that accept federal funds are required by statute to waive their Eleventh Amendment immunity to § 504 claims." *Doe v. Nebraska,* 345 F.3d 593, 598 (8th Cir.2003); *Jim C. v. United States,* 235 F.3d 1079, 1081(8th Cir.2000)("The Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504."). This waiver of sovereign immunity applies only to those agencies that receive federal funds. *Id.* Thus, a plaintiff wishing to pursue a Rehabilitation Act claim against the state will need to show that the agency in question waived its Eleventh Amendment immunity with respect to Section 504 of the Rehabilitation Act and that the waiver is valid under the Spending Clause. *Randolph v. Rodgers,* 253 F.3d 342, 349 (8th Cir.2001).

■ As noted, the Eighth Circuit has held that if an inmate wishes to pursue a Rehabilitation Act claim against a state, its correctional institution, or prison officials, the inmate must show that the state waived its Eleventh Amendment immunity with respect of Section 504 of the Rehabilitation Act and that the waiver is valid under the Spending Clause. Damron has made no such showing. The Court expressly finds that Damron's Rehabilitation Act claim against the North Dakota Department of Corrections and the prison officials in their official capacity for monetary damages must fail on Eleventh Amendment immunity grounds. However, to the extent Damron's Rehabilitation Act claim seeks injunctive relief, this claim is not barred by the Eleventh Amendment.

## 2) CLAIM AGAINST THE PRISON OFFICIALS IN THEIR INDIVIDUAL CAPACITY

■ Damron has also asserted violations of the Rehabilitation Act against the prison officials in their individual capacities, but he does not specify what provisions of the Rehabilitation Act the prison officials have allegedly violated. However, the Court presumes that Damron is asserting a violation of Section 504 of the Rehabilitation Act. Section 504 prohibits discrimination on the basis of handicap in programs receiving federal financial assistance. 29 U.S.C. § 794(a). It provides in relevant part, that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a prima facie case of disability discrimination under Section 504, Damron must prove that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against on the basis of his disability. M.P. v. Independent School District No. 721, 326 F.3d 975, 981–82 (8th Cir.2003) (citing Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir.1999)).

■ Here, Damron has made no allegation that the prison officials in their individual capacities are "a program or activity of a public entity receiving federal funds." Although the Eighth Circuit has not directly addressed the issue of whether an individual may be sued under Section 504 of the Rehabilitation Act, the Fifth Circuit has held that an individual may not be sued in his or her individual capacity under the Rehabilitation Act. Lollar v. Baker, 196 F.3d 603, 609 (5th Cir.1999).

The Court views the reasoning of the Fifth Circuit as persuasive and finds that Section 504 of the Rehabilitation Act does not provide for claims against individuals. Accordingly, Damron's Rehabilitation Act claims against the prison officials in their individual capacities must be dismissed.

## 3) SUMMARY JUDGMENT

Damron's only remaining claim under the Rehabilitation Act is his claim for injunctive relief against the prison officials in their official capacity. As discussed above, a prima facie case of disability discrimination under Section 504, requires Damron to prove that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against on the basis of his disability. M.P. v. Independent School District No. 721, 326 F.3d 975, 981–82 (8th Cir.2003) (citing Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir.1999)).

■ The Court finds that Damron's Rehabilitation Act claim for injunctive relief against the prison officials in their official capacity fails for the very same reasons Damron's ADA claim failed. As stated above, Damron has failed to provide sufficient evidence of his alleged disability. More important, Damron has failed to show or even allege that he was denied access to a computer or that his calculator was taken away because of his disability. Accordingly, the Court finds that when viewed in a light most favorable to Damron, there are no genuine issues of material fact regarding his Rehabilitation Act claim.

## C. SECTION 1983 CLAIMS

## 1) ELEVENTH AMENDMENT IMMUNITY

■ The Eleventh Amendment discussion from above applies equally to Dam-

ron's 42 U.S.C. § 1983 claims. The United States Supreme Court has held that "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir. 1999). Accordingly, a private individual may not sue a State or its officials in their official capacity under 42 U.S.C. § 1983. The Court finds that Damron's Section 1983 claim against the Department of Corrections and the prison officials in their official capacities is barred by the Eleventh Amendment.

## 2) *QUALIFIED IMMUNITY*

Damron has also asserted Section 1983 claims against the prison officials in their individual capacities. Although Damron does not specifically set forth his Section 1983 claim, the Court interprets his complaint to allege that prison officials violated his Due Process and Equal Protection rights by allegedly denying him access to educational opportunities, denying him the use of his calculator, removing "legal papers" from his cell, and improperly conducted disciplinary proceedings.[3] The prison officials assert that they are shielded from suit by the doctrine of qualified immunity.

The United States Supreme Court has held that "government officials are entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Eighth Circuit has instructed:

Qualified immunity shields government actors from liability in civil lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ... As our cases further establish, however, the question of qualified immunity requires more than a determination that a particular right is "clearly established" in the abstract. Instead, we must examine whether reasonable officials could have believed their actions violated clearly established law, given the information available to the officials at the time of the attack.

*Prater v. Dahm,* 89 F.3d 538, 541 (8th Cir.1996) (citations omitted). To determine whether the prison officials are immune from suit, the Court must review three factors: (1) whether Damron has asserted a violation of a constitutional or statutory right; (2) if so, was that right clearly established at the time of the alleged violation; and (3) whether, given the facts viewed in a light most favorable to Damron, there are no genuine issues of material facts as to whether a reasonable official would have known that the alleged action(s) violated that right. *Burnham v. Ianni,* 119 F.3d 668, 673 (8th Cir.1997).

### a) *ACCESS TO EDUCATION*

Damron claims that North Dakota prison officials violated his right to an education while imprisoned. The prison officials argue that Damron has no constitutional right to an education while imprisoned, and thus, the prison officials are entitled to qualified immunity in re-

---

**3.** From the complaint it is difficult to discern whether Damron is alleging that prison officials violated his Equal Protection rights in regard to his access to educational opportunities or whether he is alleging that the prison officials violated only his Due Process rights. *See* Amended Complaint, at ¶¶ 33–39 (Doc.

No. 15). Since Damron's subsequent filings allege that the prison officials violated his Equal Protection rights by allowing other inmates with similar disciplinary histories to continue using the educational computers, the Court will review this assertion as well.

gard to Damron's Equal Protection claim involving his access to education.

■ The prison officials are only partially correct in their assessment of Damron's right to an education while imprisoned. Eighth Circuit case law clearly provides that "[p]risoners have no constitutional right to educational or vocational opportunities during incarceration". *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir.1992). "[H]owever, if the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis." *Id.* In other words, while a state has no obligation to provide inmates with access to educational opportunities while imprisoned, if a state chooses to provide or allow inmates access to educational opportunities, it cannot deny an inmate equal access to such opportunities without a rational basis for such discriminatory treatment.

■ In evaluating the prison officials claim of qualified immunity as to Damron's Equal Protection claim, the Court finds that prison officials are not entitled to qualified immunity. Damron has asserted a violation of a constitutional or statutory right, i.e. that prison officials denied him equal access to educational opportunities the state decided to provide its prisoners. Damron's right to equal access to the educational opportunities provided by the prison was clearly established through Eighth Circuit case law at the time of the alleged violation. Finally, when the facts are viewed in a light most favorable to Damron, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated that right; i.e., prison officials would have known it was a violation of Damron's rights to deny equal access to educational services that the state chose to provide to its prisoners without a rational

basis for such discrimination. Accordingly, the prison officials are not entitled to qualified immunity as to Damron's Equal Protection claim regarding his access to education.

## b) *CALCULATOR*

■ Damron also claims that prison officials violated his right to possess a specific calculator and that other inmates have been allowed to keep similar calculators or calculators with more memory capabilities. The prison officials respond by asserting that an inmate has no constitutional right to the possession of a calculator, and thus, the prison officials are entitled to qualified immunity in regard to Damron's claim involving his possession of a calculator. The same qualified immunity framework set forth above applies equally to this claim.

While there is no Eighth Circuit case law specifically addressing whether an inmate has a constitutional right to possess a calculator, other courts have addressed this issue. A United States District Court in Illinois addressed a nearly identical claim from an inmate in an unreported decision in 2003. *See Agrawal v. Briley*, No. 02 C 6807, 2003 WL 164225, (Jan. 22, 2003, N.D.Ill.).

It goes without saying that Plaintiff has no constitutional right to purchase or possess a calculator; any claim must be based on disparate treatment. Plaintiff does not allege that the refusal to sell him the calculator was a result of racial or other class-based discrimination. It is possible, under certain circumstances, to state a claim under the Equal Protection clause as a "class of one," where plaintiff alleges that he has been intentionally treated differently from others similarly situated without any rational basis for the difference in treatment.

*Id.* at *5. The Court finds this reasoning persuasive. Damron's basic claim that he is entitled to possess a calculator of his choosing is incorrect. Damron clearly does not have a constitutional right to possess a calculator. However, Damron's claim that other inmates have been allowed to keep similar or "more advanced" calculators mirrors his Equal Protection claim regarding access to education.

In evaluating the prison officials claim of qualified immunity as to Damron's claim regarding his calculator, the Court also finds that prison officials are not entitled to qualified immunity. Damron has asserted a violation of a constitutional or statutory right, i.e. that prison officials violated his Equal Protection right by intentionally treating him differently than other similarly situated inmates without any rational basis for the difference in treatment. Damron's Equal Protection rights were clearly established at the time of the alleged violation. Finally, when the facts are viewed in a light most favorable to Damron, there are no genuine issues of material facts as to whether a reasonable official would have known that the alleged actions violated that right; i.e. prison officials would have known it was a violation of Damron's rights by intentionally treating him differently than other similarly situated inmates without any rational basis for the difference in treatment. Accordingly, the prison officials are not entitled to qualified immunity as to Damron's Equal Protection claim regarding his calculator.

### c) *LEGAL PAPERS*

Damron alleges that certain legal papers were unlawfully removed from his cell by prison officials. The prison officials assert that the searching and limiting the amount and type of items in an inmates cell is not a violation of an inmate's constitutional rights.

In *Lyon v. Farrier*, the Eighth Circuit addressed a claim by another inmate who accused prison officials of allegedly removing legal materials from his cell. 730 F.2d 525, 526 (8th Cir.1984). Relying on the Supreme Court case of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Eighth Circuit stated:

"[T]he due process rights of prisoners and pretrial detainees [against the deprivation of their property without due process of law] are not absolute; they are subject to reasonable *limitation or retraction* in light of the legitimate security concerns of the institution." (Emphasis added.) The property reduction order in the present case was adopted both to reduce a fire hazard caused by the abundance of individual property prisoners were keeping in their cells and to make prisoners easily distinguishable from other persons in the event of a disturbance. The property reduction policy was a measured response to serious health and security problems, and "substitution of judicial judgment for that of the expert prison administrators in matter such as this is inappropriate." *Id.*

*Lyon v. Farrier*, 730 F.2d 525, 527(8th Cir.1984).

In evaluating the prison officials claim of qualified immunity as to Damron's claim regarding his "legal papers," the Court finds that North Dakota prison officials are entitled to qualified immunity. Damron has not asserted a violation of a constitutional or statutory right; i.e., a prisoner's Due Process rights against the deprivation of property are not absolute. Damron has not provided any authority to support his proposition that his constitutional right to keep his "legal papers" in his cell was clearly established at the time of the alleged violation. Finally, when the

facts are viewed in a light most favorable to Damron, there are genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated that right; i.e., prison officials would have had no reason to know they were violating Damron's rights by removing items from his cell given the Eighth Circuit's case law which subjects a prisoner's Due Process rights against the deprivation of property without Due Process to reasonable limitations or retraction in light of legitimate security concerns. The Court finds that Damron's Due Process claim regarding his "legal papers" must be dismissed because the prison officials in their individual capacity are entitled to qualified immunity and are immune from suit.

### d) *DISCIPLINARY PROCEEDINGS*

Damron also alleges that his Due Process rights were violated when he was denied access to the educational computers because the prison officials accused him of downloading pictures of women wearing bikinis from the Internet. Damron contends that this accusation was "impossible and groundless" because the computer he was using did not have Internet access. In essence, Damron's complaint is more akin to a sufficiency of the evidence argument. The prison officials deny that any of Damron's Due Process rights were violated and assert that Damron was punished according to standard disciplinary procedures based on past misconduct.

■ The Eighth Circuit has clearly set forth the Due Process rights of inmates when the inmate is deprived of privileges as punishment for past misconduct.

These due process requirements … include (1) written notice of the charges, at least twenty-four hours before the hearing, in order to inform the inmate of the charges and to allow him to prepare a defense; (2) a written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action; (3) the right of the inmate to be present, to call witnesses, and to present documentary evidence, unless to do so would be unduly hazardous to institutional safety or correctional goals; and (4) in limited situations, a counsel substitute.

*Brown–El v. Delo,* 969 F.2d 644, 647 (8th Cir.1992). A decision to discipline an inmate must be supported by "some evidence." *Espinoza v. Peterson,* 283 F.3d 949, 952 (8th Cir.2002).

■ Once again, the qualified immunity standard set forth above applies to Damron's Due Process claim regarding his disciplinary proceedings. Damron has asserted a violation of his Due Process rights; i.e., that the prison officials accused and ultimately punished him for actions that were impossible for him to have taken. The Due Process rights of inmates who are disciplined, must be supported by "some evidence" and that right was clearly established at the time of the alleged violation. Finally, when the facts are viewed in a light most favorable to Damron, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right; i.e., prison officials would have known than any disciplinary action they took must be supported by at least "some evidence."

Accordingly, the Court finds that the prison officials are not entitled to qualified immunity as to Damron's Due Process claim regarding his disciplinary process.

### 3) *SUMMARY JUDGMENT*

Although the prison officials are not shielded by qualified immunity as to Damron's Equal Protection claim regarding his

access to education opportunities and to his calculator and his Due Process claim as to the disciplinary proceedings, the prison officials have also argued that they are entitled to summary judgment as to these claims.

As discussed above, it is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County,* 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden 'to designate specific facts creating a triable controversy.'" *Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112 (8th Cir.2004) (quoting *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1085 (8th Cir.1999)). In other words, Damron cannot simply rest on the mere denials or allegations in his pleadings to meet this burden.

### a) *ACCESS TO EDUCATION*

To prove an Equal Protection violation, Damron has to show that he was treated differently from similarly situated inmates and that there was no rational basis related to a legitimate state purpose for the unequal treatment. *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir.2003).

■ In his response brief, Damron contends that two other inmates, Shawn Novotony and Jonathon Moses, have been allowed to continue working with computers even though they have Class "A" infractions. Damron does not explain how he obtained this information. Other than his unsupported assertions, Damron has not provided the Court with any additional evidence to demonstrate that he has been treated differently than Novotony and Moses. The prison officials assert that Damron was suspended from his education program for disciplinary reasons and that he was not denied access to educational programs available to similarly situated inmates.

The issue of whether inmates Shawn Novotony and Jonathan Moses have been treated differently than Damron was the subject of an earlier discovery motion by Damron. In a Motion to Compel filed on November 28, 2003, Damron sought to compel the Defendants to provide "satisfactory" answers to his interrogatories. Interrogatory 16 contained a multi-part question about whether Novotony or Moses had received Class A and Class B incident reports. The Defendants set forth several objections to this interrogatory, but in their answer ultimately disclosed "that neither of the identified inmates have had an incident report relating to an infraction that was committed while participating in an education program or using the Education Department's computers." (Doc. No. 54, Exhibit 12, p. 8).

While the Court recognizes that it may be difficult for Damron to provide evidence of disparate treatment, it is not an impossible task. Mere denials or allegations in his pleadings are not sufficient. Fed. R.Civ.P. 56(e).[4] At a minimum, Damron

---

4. Rule 56(e) of the Federal Rules of Civil Procedure provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evi-

could have secured affidavits from Novotony or Moses to support his claim that they were allowed to use the educational computers after receiving Class "A" infractions. As the Eighth Circuit has made it abundantly clear, a plaintiff has an affirmative burden to designate specific facts creating a triable controversy. *Crossley v. Georgia–Pacific Corp.*, 355 F.3d 1112 (8th Cir.2004). Damron has not set forth specific facts or evidence that would allow a reasonable jury to return a verdict in his favor. The Court finds that there are no genuine issues of material fact and that the Defendants are entitled to summary judgment as a matter of law as to Damron's Equal Protection claim regarding educational opportunities.

### b) *CALCULATOR*

■ As stated above, to prove an Equal Protection violation, Damron has to show that he was treated differently from similarly situated inmates and that there was no rational basis related to a legitimate state purpose for the unequal treatment. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir.2003). In his complaint, Damron alleges that he can "name several NDSP inmates that have similar calculators, with the same functions/modes as Plaintiff's and they still have them." In his response to the Defendants' Summary Judgment Motion, Damron asserts that inmate "Jason Locken was allowed to order a 4–color sharp calculator and has it in his cell."

The record reveals that the Defendants have repeatedly denied that any other inmates possess calculators with memory capabilities. *See* Affidavit of Cordell R. Stromme, Chief of Security, at p. 2 (Doc. No. 31) ("To the best of my knowledge, no inmate has a calculator with memory storage capabilities. If I learned that an inmate had a calculator with memory storage capabilities, I would request that it be confiscated as contraband."); Affidavit of Tammy M. Barstad, at p. 2 (Doc. No. 29) ("I am not aware of any inmate at the North Dakota State Penitentiary, other than Michael Damron, that has or has had a calculator with memory storage capabilities.").

Once again, Damron has failed to designate specific facts creating a triable controversy. *See* Fed.R.Civ.P. 56(e). His bare assertion that others have been treated differently is not sufficient evidence that would allow a reasonable jury to return a verdict in favor. The Court finds that there are no genuine issues of material fact and that the prison officials in their individual capacities are entitled to summary judgment as a matter of law as to Damron's Equal Protection claim regarding his calculator.

### c) *DISCIPLINARY PROCEEDINGS*

■ Finally, Damron also asserts that he was denied his Due Process rights when he was accused of misconduct that would have been impossible for him to

---

dence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but *the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(Emphasis added).

commit. Damron makes much of the fact that he was wrongly accused of downloading unauthorized material from the Internet. Damron insists that none of the computers he had access to were connected to the Internet. The prison officials have conceded that Damron did not have access to the Internet. However, this fact does not end the inquiry.

A review of the prison records reveals that although Damron was initially accused of downloading images, this was eventually corrected. (Doc. No. 28, Exhibits D–1 and D–4). Tim Schuetzle, Prisons Division Director, advised Damron of this correction in a March 29, 2001, letter.

I have read your appeal of the disciplinary committee's recommendation to find you guilty of a code A–46 incident report for disobeying a written or verbal order, and an A–48 for unauthorized contact with the public. During an investigation into your use of the Education Department's computer, it was discovered that you possessed a 3 1/2″ floppy disc that contained a screen-saver calendar with picture of girls in bikinis, presumably taken off the Internet. The committee discovered that these pictures were actually on a CD that was given to you by staff as part of your class, but chose to find you guilty of a Class A report anyway because you had made a copy of the CD onto a floppy. You believe that this is a minor infraction, and should be handled at the Class B level.

I agree. There is no evidence that you had unauthorized contact with the public, so the A–48 will be dismissed. You were wrong to make a copy of the CD, and this did go against the directive you received from the education staff that you were only to use the computer for your school work. However, this offense does not rise to the level of a Class

A report, therefore I will reduce the code to a B–2 for disobeying the directives of your teacher. Your sanctions [sic] will be 7 days restriction to quarters.

(Doc. No. 29, Exhibit D–4). The Court can certainly understand how an inmate would be frustrated by an accusation that he downloaded Internet images when this was in fact impossible. However, the evidence clearly shows that this initial misunderstanding was remedied by prison officials and Damron agreed his conduct amounted to a minor infraction. In light of such evidence, it is clear that Damron's disciplinary sanction was supported by "some evidence." Accordingly, the Court finds that there are no genuine issues of material fact that would preclude the entry of summary judgment in favor of the prison officials in their individual capacities as to Damron's Due Process claim regarding his disciplinary sanction.

In his response to the Defendants' Motion for Summary Judgment, Damron also contends that his Due Process rights were violated in another disciplinary matter involving the unauthorized placement of passwords on computers in the "Correspondence Cubicle." However, after thoroughly reviewing his amended complaint, the Court finds that Damron's complaint does not contain any reference to this incident. The Court is aware that both the Plaintiff and the Defendants have referenced this matter in their subsequent filings, but absent such a claim in Damron's amended complaint, the matter is not properly before the Court and will not be considered.

### III. *DEFENDANTS MIKE FLUCK AND MIKE KOLDEN*

After reviewing the record, it is unclear as to whether Defendants Mike Fluck and Mike Kolden were ever properly served

with Damron's initial and amended complaints. Nevertheless, to the extent that Damron has attempted to assert ADA, Rehabilitation Act, Due Process, Equal Protection, and Section 1983 claims against these individuals on the same factual grounds as discussed above, the Court finds that all of the above arguments apply equally to Mike Fluck and Mike Kolden. Accordingly, the Court grants summary judgment in their favor as to all claims alleged.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion for Summary Judgment (Doc. No. 49). The above-entitled action is **DISMISSED WITH PREJUDICE** as to all Defendants including Mike Fluck and Mike Kolden.

**IT IS SO ORDERED.**