**Ms. S., as parent and next friend of her son, L.S., Plaintiff**

v.

**SCARBOROUGH SCHOOL COMMITTEE, Defendant**

No. CIV. 04–111–P–H.

United States District Court, D. Maine.

Feb. 7, 2005.

Richard L. O'Meara, Amy M. Sneirson, Murray, Plumb & Murray, Portland, ME,

for Ms. S., as Parent and Next Friend of Her Son, L.S., Plaintiff.

Eric R. Herlan, Drummond, Woodsum & MacMahon, Portland, ME, for Scarborough School Committee, Defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

Ms. S. is the mother of L.S., a student with a severe learning disability. Because of her employment, she is not able to be at home at the end of the school day and her child care arrangements do not always guarantee that someone will be there when L.S. arrives home from school. She has requested, therefore, that every other week[1] the Scarborough school bus driver ensure that an adult is present at the bus stop before letting L.S. off the bus in the afternoon and, if no adult is present, arrange for L.S. to be dropped off elsewhere. The Scarborough School Committee has agreed to have the bus stop in front of Ms. S.'s house, but will not ensure the presence of an adult or agree to the alternative arrangements. Scarborough has offered to provide that guarantee, however, on its special education bus. Ms. S. contends that the least restrictive environment provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487, and Maine law require Scarborough to accommodate her request on its regular school bus.[2] A hearing offi-

cer disagreed, and the United States Magistrate Judge upheld the hearing officer's decision in his Recommended Findings of Facts and Conclusions of Law ("Recommended Decision") filed December 8, 2004. After oral argument on this issue on January 28, 2005 and a review of the Recommended Decision and the record, I ADOPT the Recommended Decision of the Magistrate Judge and uphold the decision of the hearing officer. I also AFFIRM the Order issued by the Magistrate Judge on December 2, 2004 (Docket Item 20) denying the plaintiff's Motion for Leave to File a Motion to Supplement the Administrative Record because the Order is not clearly erroneous or contrary to law. *See* Fed R. Civ. P. 72(a).

In reviewing the Recommended Decision, I give "due weight" to the hearing officer's decision, and perform "something short of a complete *de novo* review," *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 989 (1st Cir.1990) (citations and internal quotations omitted). I render "a bounded, independent decision—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." *Id.* at 989–90 (citation and internal quotations omitted).

Ms. S. correctly notes confusion on the record and in the Recommended Decision regarding the time it takes to transport L.S. to his mother's house on the special

---

**1.** Ms. S has custody of L.S. every other week. When L.S.'s father has custody, the regular school bus delivers L.S. to the father's house without any guarantees. L.S. also takes the regular school bus successfully every morning, regardless of who has custody.

**2.** Ms. S. also contends that Scarborough's refusal to accommodate this request violates the Rehabilitation Act, 29 U.S.C. § 794. Compl. ¶¶ 17–21 (Docket Item 1). Because

the IDEA and the Rehabilitation Act "apply similar standards for substantive relief," *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir.2003), my analysis under the IDEA applies to both statutes. Ms. S. did not object to the Magistrate Judge's use of this approach or, as the Magistrate Judge noted, suggest any significant difference in the analysis of these statutes, *see* Recommended Decision at 6 (Docket Item 23).

education bus.[3] *See* Pl.'s Objection to Recommended Decision of U.S. Magistrate Judge ("Pl.'s Objection") at 8 n. 5 (Docket Item 26); *see also* Recommended Decision at 3, Finding 10 (stating that Ms. S. was told the special education bus ride would be forty-five to sixty minutes); *id.* at 8 (noting that the hearing officer found that the special education bus ride would take 100 minutes). The record does not clearly demonstrate the length of L.S.'s trip on the special education bus. Both parties agreed at oral argument, however, that the time issue is unimportant. The Magistrate Judge did not rely on the time issue and it does not affect my analysis here.

Ms. S. also objects to the Magistrate Judge's least restrictive environment analysis. Pl.'s Objection at 4, 10. The least restrictive environment provision of the IDEA requires that, "[t]o the maximum extent appropriate, children with disabilities ... [be] educated with children who are not disabled." 20 U.S.C. § 1412(5)(A). Maine's least restrictive alternative requirement closely tracks the federal provision. *See* Maine Special Education Regulations § 11.1, Chapter 101 of the Maine Department of Education Regulations, *available at http://www.state. me.us/education/ speced/contentrules. htm.* ("To the maximum extent appropriate, students with disabilities ... shall be educated with students who are not disabled."). Both the federal and state provisions apply to transportation. *See* 34 C.F.R. § 300.553 (when providing nonacademic services, including transportation, "each public agency shall ensure that each child with a disability participates with nondisabled children in those services and activities to the maximum extent appropriate to the needs of that child"); Maine Special Education Regulations § 6.17 ("Special education shall be provided consistent with Part 11, *Least Restrictive Educational Alternative* ....").

Ms. S. notes that the Magistrate Judge expressed doubt whether the least restrictive environment analysis applies in the transportation setting. Pl.'s Objection at 4, 10. Regardless of the Magistrate Judge's doubt, he did apply the least restrictive environment analysis, concluding that Scarborough has fulfilled its requirement to educate L.S. in the least restrictive environment. *See* Recommended Decision at 10 ("Even if the requirement does apply to transportation, however, the school has made the least restrictive transportation environment available to L.S. at all times.").

██ I have my own doubt about the application of the least restrictive environment analysis, because it is not clear that Ms. S.'s request is within the scope of the IDEA. A request is beyond the reach of the IDEA if it is made for personal reasons unrelated to the student's educational needs. *See Fick v. Sioux Falls Sch. Dist.,* 337 F.3d 968, 969–70 (8th Cir.2003) (concluding that the defendant school district did not violate the IDEA when it refused a mother's request to change her daughter's

---

3. Rick Soules, the transportation director for Scarborough schools, testified that L.S.'s regular bus ride is about twenty minutes long. Soules Testimony, Record at 283. Ms. S. testified that Soules told her that the special education bus ride would be longer because it travels all over Scarborough. Ms. S. Testimony, Record at 199–200. The previous year, the special education bus ride was forty-five minutes to an hour. *Id.* at 199. Although there was no testimony on the exact length of L.S.'s ride on the special education bus this year, Soules testified that fewer students are riding the special education bus this year. Soules Testimony, Record at 293. This year, there are only seven students total taking the special education bus, transported over three runs: four students on the first run, two on the second run and one on the third run. *Id.* at 293–94.

drop-off address from her home to an after-school day care center because the request was made for personal rather than educational reasons); *see also Gonzalez v. Puerto Rico Dep't. of Educ.*, 254 F.3d 350, 352 (1st Cir.2001) ("Educational benefit is indeed the touchstone in determining the extent of governmental obligations under the IDEA."). Ms. S. has requested the adult hand-off because she is unable to guarantee that an adult will always be present at her home when L.S. gets off the school bus. While Ms. S.'s request addresses her understandably difficult childcare situation, it does not address L.S.'s educational needs. It is therefore not covered by the IDEA and Maine's education laws. *See Fick*, 337 F.3d at 969–70; *N. Allegheny Sch. Dist. v. Gregory P.*, 687 A.2d 37, 40 (Pa.Cmwlth.1996) (holding that the IDEA and Pennsylvania law did not require the school district to transport the student to his father's out-of-district home because "the additional transportation requested serves not to address any of Gregory's special educational needs, but only to accommodate the particular domestic arrangements which Gregory's parents have made."); *see also Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971–972 (8th Cir.1999) (concluding that the failure to accommodate a request for deviation from a facially neutral transportation policy for a disabled student did not violate the Rehabilitation Act because the request

was based on the parents' non-educational preferences).

■ Even if Ms. S.'s request is within the reach of the IDEA and Maine law, I agree with the Magistrate Judge that Scarborough has provided L.S. with the least restrictive transportation environment.[4] Ms. S. suggests that the hearing officer and Magistrate Judge both failed to apply the proper least restrictive environment analysis, Pl.'s Objection at 4, 10; Pl.'s Mem. of Law at 23–24 ("Pl.'s Mem.") (Docket Item 11), and argues that I should apply either the *Daniel R.R.* or the *Roncker* test. *See* Pl.'s Mem. at 18–21. The Fifth Circuit created and the Third, Tenth and Eleventh Circuits adopted the *Daniel R.R.* test. *L.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 977 (10th Cir.2004); *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1215 (3d Cir. 1993); *Greer v. Rome City Sch. Dist.*, 950 F.2d 688, 696 (11th Cir.1991); *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048–50 (5th Cir.1989). Earlier, the Sixth Circuit created the *Roncker* test, which the Fourth and Eighth Circuits later adopted.[5] *DeVries v. Fairfax County Sch. Bd.*, 882 F.2d 876, 878–79 (4th Cir.1989); *A.W. v. Northwest R–1 Sch. Dist.*, 813 F.2d 158, 163 (8th Cir.1987); *Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir.1983).

The *Roncker* test states that "[i]n a case where the segregated facility is considered superior, the court should determine whether the services which make that

---

4. My analysis of the IDEA subsumes Maine law, given the almost identical statutory language. The plaintiff has not proposed an alternative test to apply under Maine law, and "submits that this is a case where federal and state law are parallel and that each mandates provision of transportation services in the LRE [least restrictive environment]." Pl.'s Objection at 11.

5. The First Circuit has not adopted either test. Scarborough notes that the First Circuit has

stated that "[a]ssaying an appropriate educational plan ... requires a balancing of the marginal benefits to be gained or lost on both sides of the maximum benefit/least restrictive fulcrum." *Roland M.*, 910 F.2d at 993. *See* Def.'s Opp'n to Pl.'s Objection to Recommended Decision at 10 (Docket Item 27). I analyze the issue under the *Roncker* and *Daniel R.R.* tests as Ms. S. requests, rather than rely on this limited statement by the First Circuit.

placement superior could be feasibly provided in a non-segregated setting." *Roncker*, 700 F.2d at 1063. In its recent adoption of the *Daniel R.R.* rather than the *Roncker* test, the Tenth Circuit noted that "[t]he *Roncker* test is most apposite in cases where the more restrictive placement is considered a superior educational choice." *L.B.*, 379 F.3d at 977. The court determined that the *Daniel R.R.* test applies in all cases and better tracks the statutory language. *Id.* Although application of either test to this non-academic setting is strained, I follow the Tenth Circuit's reasoning, the weight of authority and the plaintiff's substantial reliance on *Daniel R.R.* in her brief,[6] Pl.'s Mem. at 18–34, and apply the *Daniel R.R.* test.[7]

The first inquiry of the *Daniel R.R.* test is "whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child." *Daniel R.R.*, 874 F.2d at 1048. If the answer is no, the next inquiry is "whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* Under the first inquiry, the court considers: (1) steps the school district has taken to accommodate the student in the regular classroom; (2) a comparison of the educational benefits of the regular and special education classrooms; and (3) the effect of the student's inclusion on other students in the regular classroom. *Id.* at 1048–50.

I apply the test here to the transportation rather than the classroom setting. Under the first prong of the first inquiry, Scarborough has made an effort to accommodate L.S. on the regular school bus. It has agreed to provide door-to-door transportation for L.S. on the regular bus to Ms. S.'s home on the afternoons of the alternate weeks when L.S. is residing with Ms. S. rather than his father. *See* State of Maine Special Education Due Process Hearing, *S. v. Scarborough Sch. Dep't*, April 29, 2004 ("Hearing Decision"), Record at 147; Pl.'s Mem. at 2; Def.'s Mem. of Law at 9 (Docket Item 12).

I next compare the educational benefits of the regular bus with the special education bus. L.S. benefits from riding the regular bus because of the opportunity to interact with non-disabled peers. *See* Hearing Decision, Finding 6, Record at 144. L.S. would lose this benefit by riding the special education bus only 25% of the time, the afternoons of alternating weeks when he is residing with his mother. *See id.*, Record at 148. L.S. could still interact with his non-disabled peers on the regular bus the remaining 75% of the time. L.S. does not receive an educational benefit from riding the special education bus that would weigh against the benefit of the regular bus (although he would receive the adult hand-off, which Ms. S. contends is an education-related request). But given the small amount of L.S.'s transportation time involved, "[t]he impact, both positive and negative, of riding the special education bus in the afternoon on alternate weeks is minimal." *Id.*

I now consider how L.S.'s inclusion affects other students on the regular bus. Although L.S.'s "behavior on the bus is excellent," the procedure for arranging an

---

6. The plaintiff devotes a number of pages to the *Daniel R.R.* test and spends only a paragraph discussing the alternative application of the *Roncker* analysis. *See* Pl.'s Mem. at 18–34.

7. I apply the *Daniel R.R.* analysis suggested by the plaintiff to demonstrate that it yields the same result as the analysis employed by the Magistrate Judge and the hearing officer. I do not determine whether *Daniel R.R.* is always the appropriate test for evaluating the least restrictive environment in the transportation setting.

adult hand-off if no adult is present at the bus stop can delay students on L.S.'s bus, and may also affect the schedule for students on concurrent and subsequent bus runs. Hearing Decision, Findings 6, 9, Record at 144–45; *id.* Discussion and Conclusion, Record at 148. Ms. S. takes issue with the hearing officer's and Magistrate Judge's focus on potential problems that could arise from the requested accommodation. Pl.'s Objection at 3 n. 2. But Rick Soules, the transportation director for Scarborough schools, testified that if no adult were present at L.S.'s bus stop, L.S.'s bus driver might have to make at least one, but frequently two and possibly three calls by radio: first to the "bus office," where often no one answers because the employees (including Soules) are out driving buses, then to the central office, and if the receptionist is away from the desk and does not answer the phone, then to Soules, who would be driving another bus. Record at 278–279. These calls could delay L.S.'s bus, the bus Soules would be driving and subsequent bus runs, affecting around 120 students.[8] *Id.* at 279–80, 288. As the Magistrate Judge noted, the hearing officer was entitled to credit this testimony regarding the effect of L.S.'s inclusion on other students. *See* Recommended Decision at 7–8; Hearing Decision, Finding 9, Record at 144–45. Although this chain of events may occur infrequently, it could significantly affect a number of other students riding the bus or waiting at school for the bus to pick them up. Record at 278–79, 288–90.

Under the first inquiry of the *Daniel R.R.* test, the above factors (the steps Scarborough has taken to transport L.S.

on the regular bus, the minimal impact of removing him from the regular bus 25% of the time, and the impact of the further requested accommodation on the other students) indicate that transportation on the regular bus, with the use of supplemental aids and services, cannot be achieved satisfactorily on the afternoons when L.S. travels to his mother's home. *See Daniel R.R.,* 874 F.2d at 1048. Because transportation on the regular bus cannot be achieved satisfactorily, I turn to the second inquiry of the *Daniel R.R.* test, and ask "whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* Ms. S. does not argue that, other than the requested transportation accommodation, Scarborough has failed to mainstream L.S. to the maximum extent appropriate. L.S. is currently integrated in homeroom, physical education, technology, art, "CSS," drama club, field trips and lunch. Hearing Decision, Finding 3, Record at 144; Ms. S.'s Testimony, Record at 190. Although Ms. S. objects to the hearing officer's resulting conclusion that L.S. is "fully included for a large portion of his day," Ms. S. does not point to record evidence showing the relative time spent in the regular and special education classrooms. Recommended Decision at 8; *see* Hearing Decision, Discussion and Conclusion, Record at 148; Pl.'s Mem. at 23. After considering the record evidence and giving due weight to the hearing officer's conclusion that L.S. is included for a large portion of his day, I conclude that Scarborough has mainstreamed L.S. to the maximum extent appropriate. Under the *Daniel R.R.* test proposed by Ms. S., Scarborough has not violated the least restric-

---

**8.** These problems are minimized on the special education bus because there are fewer children involved (only seven children total, transported over three bus runs), there are two adults on the special education bus (leaving the one who is not driving free to attempt

to contact Ms. S, perhaps by cell phone), and children waiting for the special education bus are better supervised than children waiting for the regular bus, reducing problems if subsequent bus runs are delayed. Soules Testimony, Record at 293–94, 304–05.

tive environment provision of the IDEA because transport of L.S. on the regular school bus, with the use of supplementary aids and services, cannot be achieved satisfactorily and Scarborough has mainstreamed L.S. to the maximum extent appropriate.[9]

I therefore AFFIRM the Magistrate Judge's Recommended Decision.

SO ORDERED.

---

**9.** Application of the *Roncker* test yields the same result. Under *Roncker,* to determine whether the services that make the segregated placement superior could be feasibly provided in a non-segregated setting, the court should: (1) weigh the benefits of the segregated and non-segregated settings; (2) consider if the student is a disruptive force in the non-segregated setting; and (3) evaluate the cost of placing the student in the non-segregated setting. *Roncker,* 700 F.2d at 1063. Both parties agree that cost is not an issue. As discussed, the impact of L.S. riding the special education bus in the afternoons on alternate weeks is not significant. L.S.'s behavior on the regular bus is not disruptive, but the adult hand-off on the regular bus affects the students on L.S.'s bus and other buses running at the same time, as well as students on later bus runs. The *Roncker* test thus leads to the same conclusion, that Scarborough has provided L.S. with the least restrictive transportation environment.